912 F.2d 306
 59 USLW 2197, RICO Bus.Disp.Guide 7546
 Ichiro IKUNO, Plaintiff-Appellant,
v.
Peter YIP, a/k/a Peter Yip Shut-Yuen; a/k/a Shut-Yuen Yip
and Jane Doe Yip, husband and wife; Peter Cheung and Jane
Doe Cheung, husband and wife; Ka C Li and Jane Doe Li,
husband and wife, Defendants-Appellees.
 No. 89-35319.
 United States Court of Appeals,
Ninth Circuit.
 Argued May 8, 1990.
Submission Withdrawn May 9, 1990.
Resubmitted July 5, 1990.
Decided Aug. 17, 1990.
 
 Bo Barker, Bellevue, Wash., for plaintiff-appellant.
 Tyna Ek, Michael L. Farrell, Merrick, Hofstedt & Lindsey, Seattle, Wash., for defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington.
 Before WRIGHT, POOLE and BRUNETTI, Circuit Judges.
 EUGENE A. WRIGHT, Circuit Judge:
 
 
 1
 Appellant Ichiro Ikuno seeks the substance behind a phantom. He appeals the district court's dismissal of his claims under the Commodities Exchange Act, RICO claims and pendent state claims against Li and other defendants allegedly involved in a fraudulent commodities trading corporation. We now AFFIRM in part, REVERSE in part, and REMAND.
 
 BACKGROUND
 
 2
 Ichiro Ikuno and other investors were shown an attractive brochure describing the desirability of investing with King Lung Commodities, Ltd. (KLCL), the purported subsidiary of a multi-national conglomerate with its home offices in Hong Kong. The parent conglomerate, Continental King Lung Group, was described as being engaged in banking, insurance, real estate, construction, securities and commodities. The chairman of both entities was listed as Peter Yip.
 
 
 3
 Appellee Ka Li is the only appellee who has filed a brief on appeal. He is an attorney in Seattle, Washington and was responsible for the incorporation of KLCL in the state of Washington. He also filed two annual reports for KLCL in 1982 and 1983 and was involved in negotiation of a lease on behalf of KLCL. Although not an officer or director of KLCL, Li signed his name on the annual reports in a space designated for an officer or director's signature and listed his title as "Attorney of the Corporation." CR 73, Exhibit 18, 32.
 
 
 4
 The brochure shown to Ikuno informed that KLCL was one of the largest gold traders in the Far East and boasted, among other things, a 24-hour research department "with a point to point telex communications network." KLCL was incorporated in Washington state.
 
 
 5
 Ikuno invested more than $70,000 in KLCL between 1982 and 1983. It proved to be a phantom corporation and, in January 1984, it shut down and its records were seized by the state. Two of its employees, Mark Chow and Tin On, pleaded guilty to unlawful selling of commodities and chairman Peter Yip, featured prominently in the brochure, disclaimed any knowledge of KLCL.
 
 
 6
 Ikuno obtained a state court judgment against KLCL for $265,800 and caused the sheriff to levy execution on all assets of KLCL. At the auction, Ikuno bought all claims of KLCL.
 
 
 7
 He brought this action, alleging violations of RICO and the Commodities Exchange Act as well as pendent state claims under the Washington Consumer Protection Act and legal negligence claims against appellee Li.
 
 
 8
 The case was originally assigned to Judge Voorhees who denied defendant Li's motion for summary judgment. It was transferred to Judge McGovern who denied a motion for reconsideration of the denial of the summary judgment action. Both judges found that summary judgment was precluded by genuine issues of material fact.
 
 
 9
 The case was again transferred, this time to Judge Zilly. Defendants brought a second summary judgment motion that was virtually identical to the first. Judge Zilly granted it.
 
 DISCUSSION
 I. Standard of Review
 
 10
 We review de novo the grant of summary judgment, Kruso v. Int'l Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989).
 
 II. RICO Claims
 
 11
 It is unclear exactly what aspects of appellant Ikuno's RICO claims the court found deficient. The transcript of the summary judgment oral argument proceeding indicates that the court granted summary judgment on the RICO claims because of two specific deficiencies: (1) failure to demonstrate that Li controlled KLCL within the meaning of Sec. 1962(b); and (2) failure to demonstrate specific intent to defraud under Sec. 1962(c). See CR 98 at 51. In its later order of March 29, 1989, however, the court stated also that Ikuno failed to demonstrate a causal link between his injuries and Li's actions. See CR 109 at 3-5.
 
 
 12
 Additionally, Li now argues on appeal that Ikuno's RICO claims are deficient because they fail to show a pattern of racketeering activity as required under 18 U.S.C. Sec. 1962.
 
 
 13
 We address first the broader issues of pattern and causation before turning to the more narrow issues of control and specific intent requirements.
 
 A. The Pattern Requirement
 
 14
 Although it is a close question, we conclude that Ikuno has met the "pattern" requirement.
 
 
 15
 The term "pattern of racketeering" has resisted easy definition.[1] The Supreme Court has suggested that "continuity plus relationship" between the predicate acts "combines to produce a pattern," and opined that Congress "had a fairly flexible concept of pattern in mind." H.J. Inc. v. Northwestern Bell Tel. Co., --- U.S. ----, 109 S.Ct. 2893, 2900, 2907, 106 L.Ed.2d 195 (1989). The Court noted also that sporadic activity or widely separated and isolated criminal offenses would not form a pattern. Id. 109 S.Ct. at 2900.
 
 
 16
 We have adopted a test for pattern which inquires whether the predicate acts are sporadic or isolated. Sun Savings & Loan v. Dierdorff, 825 F.2d 187, 194 (9th Cir.1987). If they are isolated and sporadic, then they cannot form a "pattern." Id. at 194.
 
 
 17
 Ikuno argues that a pattern was created by Li's filing of two allegedly false annual reports. Although there is no talismanic number of predicate acts needed to establish a pattern, two acts is an accepted minimum. Northwestern Bell, 109 S.Ct. at 2899. Li's actions thus could create a pattern because "Congress envisioned circumstances in which no more than two predicates would be necessary to establish a pattern of racketeering." Id.
 
 
 18
 His actions also carried with them the threat of continuity. He was filing annual reports and there is no evidence that he would have stopped doing so if KLCL had not ceased to do business.
 
 
 19
 Being mindful that "RICO is to be read broadly," Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 497, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985), we hold that sufficient evidence of a pattern was alleged to withstand a motion for summary judgment.
 
 B. The Causation Requirement
 
 20
 Ikuno argues that the court improperly made factual findings about causation when it granted Li's motion for summary judgment. We agree.
 
 
 21
 In its March 28, 1989 Order, the court said:
 
 
 22
 Li's conduct did not cause plaintiff's injuries. Instead, Ikuno's injuries flowed from the conduct of other individuals associated with [KLCL].
 
 
 23
 CR 109 at 5.
 
 
 24
 It is difficult to understand how the court reached this summary conclusion given the factually complex nature of the case. It simply agreed with Li's arguments that his role in KLCL's operations was a very minor one. Those assertions, however, were hardly undisputed.
 
 
 25
 For example, the deposition of KLCL's Seattle Operations manager, Tin On, refutes Li's contentions. He testified that neither Li's involvement in or knowledge of King Lung's activities was limited:
 
 
 26
 Q Did you ever hear the name Ka Li? Mr. Li the attorney?
 
 
 27
 A Yeah. Peter Cheung hire Ka Li for him.
 
 
 28
 Q Did you consult with Ka Li?
 
 
 29
 A Consult?
 
 
 30
 Q If you ever had questions, did you call Mr. Li?
 
 
 31
 A Yeah. Every person called Ka Li. Peter Cheung told me that Ka Li is one of the attorney he hire in Seattle.
 
 
 32
 CR 76, Exhibit C (emphasis added); see also CR 74 at 7.
 
 
 33
 Whether Li caused Ikuno's alleged injuries depends upon the extent of Li's involvement with KLCL. The extent of this involvement is disputed and unclear from the record. It is a genuine issue of material fact which precludes summary judgment.
 
 
 34
 C. The Control Requirement Under Sec. 1962(b)
 
 
 35
 The court dismissed appellant Ikuno's Sec. 1962(b) claim against Li because it found no evidence that Li controlled King Lung Ltd. We disagree.
 
 
 36
 The term "control" is not defined in the statute. Section 1962(b) states:
 
 
 37
 (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
 
 
 38
 18 U.S.C. Sec. 1962(b) (emphasis added).
 
 
 39
 Although there is little case law interpreting the term, we find guidance in Second and Seventh Circuit decisions on this issue.
 
 
 40
 In Sutliff, Inc. v. Donovan Co., 727 F.2d 648 (7th Cir.1984), the court opined that control within the meaning of Sec. 1962(b) need not be formal control and "need not be the kind of control that is obtained, for example, by acquiring a majority of the stock of a corporation." 727 F.2d at 653 (citing United States v. Jacobson, 691 F.2d 110, 112 (2d Cir.1982) (per curiam)); see also Cincinatti Gas & Elec. Co. v. General Electric Co., 656 F.Supp. 49, 85 (S.D.Ohio 1986) (party found to have control under Sec. 1962(b) when it had voting rights and was directly involved in management).
 
 
 41
 Applying these principles, we hold that a finding of control under Sec. 1962(b) is best determined by the circumstances of each case and does not require formal control such as the holding of majority stock or actual designation as an officer or director.
 
 
 42
 Li was the incorporator of KLCL, negotiated a lease for it, signed its corporate reports in a space designated for officers and directors of the corporation and held himself out as the company's attorney. See Affidavit of Ka Li, CR 73 Ex. 61; 1982 Annual Corporate Report, CR 73 Ex. 18. This evidence at least raises a genuine issue of material fact as to whether Li possessed sufficient control over KLCL to be held liable under Sec. 1962(b). The issue should have gone to a jury. Cf. Jacobson, 691 F.2d at 112 (jury could have inferred control from party's control over business' lease).[2]
 
 
 43
 D. The Specific Intent Requirement Under Sec. 1962(c)
 
 
 44
 The court dismissed Ikuno's action for mail fraud under Sec. 1962(c) because he failed to produce evidence of a specific intent to defraud. Ikuno argues that specific intent may be proven circumstantially and is an inappropriate issue for adjudication on summary judgment. We agree.
 
 
 45
 We considered in Sun Sav. and Loan Ass'n v. Dierdorff whether specific intent had been sufficiently alleged in the context of a motion to dismiss under Fed.R.Civ.P. 12(b)(6). We reiterated that such intent need not be expressly alleged but could be shown by "the existence of a scheme which was 'reasonably calculated to deceive persons of ordinary prudence and comprehension' and this intention is shown by examining the scheme itself." 825 F.2d 187, 195-96 (9th Cir.1987) (citations omitted).[3] We concluded that the complaint conveyed by implication that there was intent to deceive or defraud.
 
 
 46
 There is far more than a naked complaint to examine. The record is voluminous and two district judges had denied motions for summary judgment because of the existence of material issues of fact. Examination of the alleged scheme, a plan to defraud investors by portraying KLCL as a legitimate business, obviously reveals implied if not express intent to defraud. If Li did falsify annual reports, then he helped to perpetuate the ongoing fraud that was KLCL. At the very least, this record contains sufficient contested facts on this issue to preclude summary judgment.
 
 E. Other Requirements Under Sec. 1962(c)
 
 47
 Li argues also that: (1) there is no evidence that he devised a scheme or artifice to defraud; and (2) there is no evidence of his actually using the mails in furtherance of any scheme. Both arguments involve questions of fact and are inappropriate for summary judgment disposition.
 
 
 48
 First, there is sufficient controversy in the record as to the extent of Li's involvement in KLCL Ltd. to require further factfinding. Second, Ikuno argues correctly that it is unnecessary to show evidence of Li's personal use of the mails. Use of the mails need only be reasonably foreseeable as part of the alleged scheme. See United States v. McDonald, 576 F.2d 1350, 1359-60 (9th Cir.1978). Foreseeable use of the mails in this case is demonstrated in the record. See Declaration of Helen W. Morris located at CR 73 exhibit 68.
 
 III. Commodities Exchange Act Claims
 
 49
 Ikuno asserts that Li violated the Commodities Exchange Act ("CEA") because neither KLCL nor its officers, directors, employees or agents were registered in accordance with its provisions. He asserts specific violations of 7 U.S.C. Sec. 6d and 7 U.S.C. Sec. 25.[4]
 
 A. 7 U.S.C. Sec. 6d
 Section 6d states in part:
 
 50
 It shall be unlawful for any person to engage as futures commission merchant ... unless- (1) such person shall have registered, under this chapter, with the Commission as such futures commission merchant or introducing broker and such registration shall not have expired nor been suspended nor revoked.
 
 
 51
 Ikuno does not argue that Li directly violated Sec. 6d by acting as a futures commission agent or by soliciting orders or selling commodities. Rather, he says that Wash.Rev.Code Sec. 23A.44.100 requires holding Li responsible for the futures commission merchant activities of others.
 
 
 52
 Wash.Rev.Code Sec. 23A.44.100 provides that:
 
 
 53
 All persons who assume to act as a corporation without authority so to do shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof.
 
 
 54
 Ikuno argues that Li acted without authority and is therefore jointly and severally liable for the debts incurred by KLCL under Wash.Rev.Code Sec. 23A.44.100. In short, he reasons that if KLCL is liable under 7 U.S.C. Sec. 6d, then so is Li. He, however, presents no legal authority for such a result.
 
 
 55
 The Washington statute protects those relying on the misrepresentations of individuals claiming to act with authority of the corporation. For example, the statute makes promoters liable for contracts made on behalf of not-yet-formed corporations. See, e.g., Goodman v. Darden, Doman & Stafford Associates, 33 Wash.App. 278, 653 P.2d 1371, aff'd, 100 Wash.2d 476, 670 P.2d 648 (1982). There is no evidence here that Li ever made such representations to Ikuno.
 
 
 56
 Because Ikuno does not allege that Li is a futures commission merchant or that he relied upon Li's misrepresentations, his theory of Li's liability under 7 U.S.C. Sec. 6d fails.
 
 B. 7 U.S.C. Sec. 25(a)
 
 57
 7 U.S.C. Sec. 25(a) provides for a private right of action for aiding and abetting violations.[5] The section became effective "with respect to causes of action accruing on or after the date of enactment ... [January 11, 1983]." 7 U.S.C. Sec. 25(d). The district court reasoned that Ikuno's cause of action had accrued prior thereto and dismissed the claim.
 
 
 58
 On appeal, Ikuno makes two arguments. First, he argues that although the conduct of the defendant occurred before the effective date, the cause of action did not accrue until the plaintiff suffered actual damage, which came after the effective date. This argument fails.
 
 
 59
 7 U.S.C. Sec. 25(a) applies only prospectively except for circumstances in which the plaintiff had a preexisting implied right of action. E.g., Bennett v. E.F. Hutton, Co., Inc., 597 F.Supp. 1547, 1552 (N.D.Ohio 1984). Ikuno has made no showing that he had such a claim.
 
 
 60
 Ikuno also argues that Li's continuing conduct after the effective date violated the provision. He cites three actions by Li. First, Li filed an annual corporate report in 1983 that prevented KLCL from being dissolved administratively. Second, Li never advised Yip or KLCL that selling commodities without a license was unlawful. Third, Li may have been the author of a letter advising investors to be patient while KLCL was closed for an audit. All three actions occurred after the enactment and effective date of the provision. If Ikuno were able to prove that Li was aware that KLCL was selling commodities unlawfully,[6] a trier of fact could conclude that Li willfully aided, abetted, or counseled the other defendants in committing a crime against Ikuno.
 
 
 61
 As questions of material facts do exist that might support a finding that Li violated 7 U.S.C. Sec. 25(a), the summary judgment must be reversed as to this claim.
 
 
 62
 IV. Washington Consumer Protection Act Claims
 
 
 63
 The district court dismissed Ikuno's Washington Consumer Protection Act (CPA) claim after characterizing it as being a malpractice action, rather than a CPA claim. Dismissal was proper.
 
 
 64
 Relevant state law does not support Ikuno. Washington has recognized that both the practice of law and medicine may give rise to CPA claims. Short v. Demopolis, 103 Wash.2d 52, 691 P.2d 163, 168 (1984); Quimby v. Fine, 45 Wash.App. 175, 724 P.2d 403, 405-06 (1986). These may arise, however, only when the actions at issue are chiefly concerned with "entrepreneurial" aspects of practice, such as the solicitation of business and billing practices, as opposed to claims directed at the "competence of and strategy" employed by the CPA defendant. Short, 691 P.2d at 168; Quimby, 724 P.2d at 406.
 
 
 65
 Ikuno's claim arises from Li's alleged failure to advise KLCL of the risks associated with conducting an unlawful business. He analogizes this alleged failure to inform to a medical patient's lack of informed consent as in Quimby.
 
 
 66
 In Quimby, however, the court concluded merely that the complaint's allegations were sufficient to allow further discovery on the issue whether the patient's consent had been affected by an entrepreneurial aspect of the doctor's practice. Here, discovery had already been conducted and preliminary research reveals no evidence that Li undertook any solicitation of KLCL's business.[7]
 
 
 67
 Any cause of action brought by Ikuno could involve only Li's alleged negligence in instructing KLCL in how lawfully to trade commodities. That would sound in tort rather than within the Washington state CPA.
 
 
 68
 Dismissal of the CPA claim was proper because the facts are undisputed and Li was entitled to judgment as a matter of law.
 
 
 69
 V. Ikuno's Legal Negligence Claims Against Li
 
 
 70
 Ikuno also brings a legal negligence claim against Li. To maintain such a claim in Washington, the plaintiff usually must establish that an attorney-client relationship exists. E.g., Stangland v. Brock, 109 Wash.2d 675, 747 P.2d 464, 467 (1987). In the absence of one, there must be another basis to say that the attorney owed a duty to the plaintiff. Id.
 
 
 71
 A duty between an attorney and a non-client plaintiff may be found under two theories in Washington. Under the first, a multi-factor balancing test is applied to determine if an attorney owed a duty to the plaintiff.[8] The inquiry under this test focuses on whether the attorney's services were intended to affect the plaintiff. Id. Under the second theory, the plaintiff must prove that he or she was expected to benefit from the established attorney-client relationship. Id.
 
 
 72
 For example, courts applying these theories have held that an attorney drafting a will for a client owes a duty to a third party beneficiary. Under the first theory, the drafting of a will is intended to affect beneficiaries. Id. 747 P.2d at 467-68. Under the second theory, the beneficiaries of a will are intended to benefit from the relationship between the testator and the attorney drafting the will. Id. at 468.
 
 
 73
 Although Li's services ultimately had an impact on Ikuno, they were not performed with the intent of affecting him. Nor was Ikuno the intended beneficiary of the services. The relationship is too attenuated to impose a duty on Li toward Ikuno. Li's duty was to KLCL. If he performed his services negligently, only KLCL can bring an action to recover under a negligence theory.
 
 VI. Ikuno's Acquired Legal Negligence Claims
 
 74
 Ikuno argues that he owns any legal negligence claims that KLCL could assert against Ka Li because he bought all KLCL's property at a sheriff's sale.[9] The district court rejected this argument and dismissed the legal negligence claim against Li. We agree with Ikuno and hold that KLCL's potential legal negligence claim against Li was property subject to execution.
 
 
 75
 Whether potential legal negligence claims are property subject to execution is a question of first impression in Washington. We must interpret Washington law and decide this question as we think the Washington courts would. City of Flagstaff v. Atchison, Topeka & Santa Fe, 719 F.2d 322, 323 (9th Cir.1983).
 
 
 76
 Wash.Rev.Code Sec. 6.04.060 governs execution sales and provides that "[a]ll property, real and personal, of the judgment debtor that is not exempted by law is liable to execution." Wash.Rev.Code Sec. 6.04.060 (Supp.1990).[10] Choses in action are not legislatively exempt from execution. Wash.Rev.Code Ann. Sec. 6.15.010 (Supp.1990) (formerly Wash.Rev.Code Ann. Sec. 6.16.020).
 
 
 77
 Although we have found no Washington cases precisely addressing the issue whether potential legal negligence claims are subject to execution, we find that Woody's Olympia Lumber Inc. v. Roney, 9 Wash.App. 626, 513 P.2d 849 (1973), provides guidance. In Woody's Olympia, the court held that, although undetermined and unliquidated, a claim for medical malpractice that was capable of being converted into a definitive judgment was property under the statutory provision governing execution sales. Woody's Olympia, 513 P.2d at 853.[11]
 
 
 78
 Liberally construing the Washington execution statute, the court in Woody's Olympia, said:
 
 
 79
 [o]ur statute is sufficiently broad to include unliquidated tort claims even if of dubious value, and we see no reason to limit by judicial construction or prohibit the judicial process of attachment or execution by excluding such claims. If such a step is to be taken, it is for the legislature and not for the courts.
 
 
 80
 513 P.2d at 853-54. See also Bergen v. F/V St. Patrick, 686 F.Supp. 786, 787 (D.Alaska 1988) (court construed Alaska statutes as allowing execution upon potential causes of action against judgment-debtors' insurer and attorneys) (citing Woody's Olympia); Whitehead v. Van Leuven, 347 F.Supp. 505, 510 (D.Idaho 1972) (court construed Idaho statutes as allowing execution upon potential cause of action against insurer).
 
 
 81
 Li argues that Woody's Olympia is limited to medical malpractice claims already commenced.[12] He asserts that the unique and personal nature of the attorney-client relationship prohibits potential legal negligence claims from being subject to execution.
 
 
 82
 He urges us to follow the reasoning of the Nevada Supreme Court in Chaffee v. Smith, 98 Nev. 222, 645 P.2d 966 (1982). In Chaffee, the court held that public policy prevented the transfer of a previously unasserted claim for legal malpractice because "the decision as to whether to bring a malpractice action against an attorney is one peculiarly vested in the client." Id. 645 P.2d at 966.[13]
 
 
 83
 We decline to follow Chaffee, however, absent evidence of legislative intent to limit Washington's execution statutes.[14] As the court noted in Woody's Olympia, Washington has a broad statute on execution, and any limitation on its application should be left to the legislature. Woody's Olympia, 513 P.2d at 854. Accord Denham v. Farmers Ins. Co., 213 Cal.App.3d 1061, 262 Cal.Rptr. 146 (1989) (execution allowed under Nevada law upon potential claim against insurer where legislature had not amended statute to prohibit execution). The Washington legislature has not seen fit to limit the application of the execution statute. Nor shall we.
 
 CONCLUSION
 
 84
 The judgment is AFFIRMED as to the claims under the Commodities Exchange Act, 7 U.S.C. Secs. 6 and 25(b) and the Washington Consumer Protection Act, but REVERSED and REMANDED as to the claims under the Commodities Exchange Act, 7 U.S.C. Sec. 25(a), RICO and acquired legal negligence claims.
 
 
 
 [1]
 In a recent case on this question, Justice Scalia stated that attempts by the federal judiciary to define the term have "produced the widest and most persistent circuit split on an issue of federal law in recent memory." H.J. Inc. v. Northwestern Bell Tel. Co., --- U.S. ----, 109 S.Ct. 2893, 2907, 106 L.Ed.2d 195 (1989) (Scalia, J., concurring)
 
 
 [2]
 We need not concern ourselves with Ikuno's less than clear arguments based upon Washington state law because the evidence noted is alone sufficient to withstand a motion for summary judgment
 
 
 [3]
 The district court was reluctant to consider Ikuno's Sun Savings arguments on motion to reconsider because he had not previously cited the case. Even if this reluctance was justified, we may consider the rule of law in Sun Savings because it presents a purely legal issue. Telco Leasing, Inc. v. Transwestern Title Co., 630 F.2d 691, 693 (9th Cir.1980) (court has discretion to consider issue rejected in district court if it presents a pure question of law)
 
 
 [4]
 Ikuno also alleged violations of 7 U.S.C. Sec. 13a-2. He makes no argument on appeal about the provision
 
 
 [5]
 Ikuno argues that Li is also liable under 7 U.S.C. Sec. 25(b)(3). This provision applies to registered futures associations. As KLCL was not a registered futures association, Li could not be liable under this provision. Ikuno's arguments under this provision, however, do support the contention that Li may be liable under 7 U.S.C. Sec. 25(a)
 
 
 [6]
 Ikuno argued that Li effectively controlled KLCL by virtue of Wash.Rev.Code Sec. 23A.44.100. We need not address this argument because it is unnecessary to find that Li controlled KLCL to hold him liable under 7 U.S.C. Sec. 25(a)
 
 
 [7]
 Nor do Ikuno's cryptic references to Li's billing invoices demonstrate that Li's relationship with KLCL arose from entrepreneurial activity on Li's part
 
 
 [8]
 "The factors in the test are: the extent to which the transaction was intended to affect the plaintiff; the foreseeability of harm to the plaintiff; the degree of certainty that the plaintiff suffered injury; the closeness of the connection between the defendant's conduct and the injury; the policy of preventing future harm; and the extent to which the profession would be unduly burdened by a finding of liability." Strangland v. Brock, 109 Wash.2d 675, 747 P.2d 464, 467 (1987)
 
 
 [9]
 Ikuno bought KLCL's assets during a sheriff's sale on December 18, 1984. The bill of sale conveyed:
 all right, title, and interest of King Lung Commodities, Ltd., ... in all rights, choses in action, and claims of any kind or nature whatsoever against any and all persons whomever, including but not limited to, claims against the following persons: ... Ka C. Li....
 See Appellant's Memorandum Concerning Purchase of Cause of Action at Sheriff's Sale, Exhibit 1 at 3.
 
 
 [10]
 In 1987, this statute was recodified as Wash.Rev.Code Ann. Sec. 6.17.090
 
 
 [11]
 Although a claim may not be subject to execution if it is not capable of being rendered certain upon judgment, United Pacific Insurance Co. v. Lundstrom, 77 Wash.2d 162, 459 P.2d 930 (1969), no such assertion has been made here
 
 
 [12]
 Li does not attempt to distinguish a claim of medical malpractice from one of legal malpractice, although we doubt such a distinction could be made
 
 
 [13]
 Li also cites Safeco Insurance Co. v. Skeen, 47 Wash.App. 196, 734 P.2d 41, rev. denied, 108 Wash.2d 1019 (1987) for this distinction. Safeco dealt with whether a judgment-creditor could force a judgment-debtor to exercise stock appreciation rights. The Washington Court of Appeals noted correctly that appellant's attempt to use Woody's Olympia was misplaced as the appellant did not "seek to execute upon the SAR's, but to compel Mr. Skeen to exercise them." Safeco, 734 P.2d at 42 n. 2. Here, Ikuno seeks to execute upon KLCL's claim against Li, not to compel KLCL to exercise its right to bring the action
 
 
 [14]
 Li also cites cases prohibiting the assignment of legal negligence claims. His reliance on these cases is misplaced. The court in Woody's Olympia specifically rejected the argument that assignability is a factor to consider when deciding whether a claim is "property" under the Washington statute governing execution. Woody's Olympia, 513 P.2d at 853