Hannelore BAUMER, et al., Plaintiffs–Appellants,

v.

James P. PACHL and Gordon L. Yow, Defendants–Appellees.

No. 92–15638.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 11, 1993.

Decided Nov. 2, 1993.

---

Robert E. Noel, Noel & Knoller, San Francisco, CA, for plaintiffs-appellants.

William Weiner, Law Offices of William Weiner, San Francisco, CA, for defendant-appellee Gordon L. Yow.

William S. Kronenberg, Murphy, Pearson, Bradley & Feeney, for defendant-appellee James A. Pachl.

Before: REINHARDT and LEAVY, Circuit Judges, and MERHIGE, Senior District Judge.*

* The Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

MERHIGE, Senior District Judge:

The matter before the Court concerns the interpretation and application of §§ 1962(c), (d) of the Racketeer Influenced and Corrupt Organizations (RICO) chapter of the Organized Crime Control Act of 1970, Pub.L. 91–452, Title IX, 84 Stat. 941, as amended, 18 U.S.C. §§ 1961–1968 (1988 ed. and Supp. II). Plaintiffs/appellants are some of approximately eighty investors in a California limited partnership known as "Golden Hills Estates" ("Golden Hills") formed by non-defendants Emery Erdy and a California corporation, Estate Planning Associates, Inc. (EPA).[1] The complaint alleges that in November 1976 Erdy and EPA commenced public sales of fractional partnership interests in "Klamath Country Reserve." In April 1981 Erdy and EPA began public sales of limited partnership interests in Golden Hills, allegedly in an effort to make payment to the Klamath plaintiffs and others. In 1982, the California Department of Corporations commenced an investigation into the sales by Erdy and EPA of limited partnership interests in Golden Hills. The Commission concluded that the transactions constituted illegal sales of unregistered securities and demanded that no further sales be undertaken.

Soon thereafter Erdy and EPA enlisted the legal help of attorney James Pachl, a defendant in the instant case. Appellants allege that between April and September, 1982 Pachl undertook by use of the United States mail numerous efforts to perpetuate the alleged fraud, including the preparation of two letters in September 1982 to the Department of Corporations and other persons and entities, allegedly designed to forestall and cover-up the fraud by minimizing or mischaracterizing the allegedly improper activities of EPA and Erdy. In addition, appellants allege that in 1982 Pachl knowingly filed a false partnership agreement in which he inflated the number of limited partners and mailed to the limited partners copies of the agreement, to create the false impression

1. Neither Erdy nor EPA are named defendants here as a result of having obtained relief from the United States Bankruptcy Court, Northern District of California, in March, 1987.

that Golden Hills was formed and operated in accordance with law.

In September, 1983, Erdy and EPA enlisted the help of defendant Gordon Yow, a licensed real estate appraiser. Yow thereafter represented that the appraised value of the property was five million dollars. In so doing, appellants assert, Yow disregarded numerous geologic and zoning considerations that significantly affected the market value of the property. This appraisal, appellants allege, was then utilized to enhance the perceived attractiveness of the Golden Hills property by means of communicating this information by mail to present and future investors.

On March 10, 1987, Pachl assisted Erdy in bankruptcy proceedings to obtain Chapter 7 relief for EPA and sent two letters to the limited partners in this regard in March and April 1987. In the letter dated March 18, 1987, Pachl allegedly represented to limited partners that there existed no assets other than the remaining part of· the property in Golden Hills. Appellants allege that Pachl had no reasonable basis to so represent and did so with the intent to discourage the limited partners from pursuing legal action against Erdy and EPA. Appellants assert that more generally, between October, 1982 and March, 1987, Erdy and EPA continued the operation of the enterprise, with the assistance of Pachl.

On March 11, 1991, plaintiffs/appellants filed the instant action, alleging RICO violations, along with pendant state claims. Appellants sought redress against two parties: (1) attorney James Pachl, who participated in the formation of the partnership and the alleged fraudulent activities of Golden Hills, allegedly in violation of federal mail fraud and securities statutes, predicate acts under § 1962(c), and the RICO conspiracy provision § 1962(d) and (2) real estate appraiser

Gordon Yow, who in alleged reckless disregard of the truth permitted the Golden Hills fraud to be sustained by overstating the value of the property, in violation of the RICO conspiracy provision, § 1962(d).

The United States District Court for the Northern District of California, Judge Lynch presiding, granted defendants' respective Rule 12(b)(6) motions on the RICO counts.[2]

A dismissal for failure to state a claim for relief is reviewed *de novo*. *Ft. Vancouver Plywood Co. v. United States*, 747 F.2d 547, 552 (9th Cir.1984). The Court shall affirm the dismissal of the complaint only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). Finding no error in the district court's determinations, we affirm.[3]

As noted, the district court dismissed appellants' claim against appellee Pachl based on § 1962(c). Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt." 18 U.S.C. § 1962(c) (1984 & Supp.1993). In dismissing the claim the district court concluded that the § 1962(c) claim as to Pachl "doesn't allege pattern, doesn't allege continuity and there's no—he has to show—for RICO he has to show there was a knowing scheme with an agreed upon goal and intent to defraud. There's no evidence of continuity. No evidence of any scheme that he's involved in."

In *Reves v. Ernst & Young*, —— U.S. ——, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), the

---

**2.** The court dismissed with prejudice the § 1962(d) claim as to Yow on October 17, 1991. The court dismissed with prejudice the § 1962(c), (d) and pendant state claims as to Pachl on March 2, 1992.

**3.** Appellee Yow raises several preliminary issues in the appeal. First, Yow asserts that the appeal as to the dismissal of the count against him is untimely. The Court discerns no merit to this

contention and concludes that the appeal is timely. Second, Yow asserts that the claim against him is barred under the applicable statute of limitations. *Agency Holding Corp. v. Malley–Duff & Associates, Inc.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). This contention, too, lacks merit as the matter is properly before the Court.

Supreme Court provided its most recent interpretation of § 1962(c). In *Reves*, purchasers of demand notes sued Ernst & Young, accountants employed by a farmer's cooperative. The gravamen of the complaint was that defendants, in arriving at a valuation in a financial audit, relied upon assessments rendered by two previous accountants, both of whom were convicted of tax fraud, allegedly in violation of § 1962(c). The audits overstated the value of the cooperative, especially the fixed-asset value of a gasohol plant. The cooperative filed for bankruptcy, and, as a result, the demand notes were frozen in the bankruptcy estate and were no longer redeemable at will by the note holders. Subsequently, the note holders sued in a class action to recover against numerous individuals and entities, including the defendants.

The *Reves* Court upheld summary judgment entered in favor of defendants. Central to the Court's holding was its interpretation of the requirement in § 1962(c) that the defendant "conduct or participate, directly or indirectly, in the conduct of such enterprises's affairs...." The *Reves* Court narrowly interpreted the phrase, concluding that for liability to attach "one must participate in the operation or management of the enterprise itself." *Id.* at ——, 113 S.Ct. at 1173. According to the Court, "RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required." *Id.* at ——, 113 S.Ct. at 1170 (footnote omitted). Ernst & Young's preparation of the audit reports,

meeting with the Board of Directors to explain the audits, and presentations at the annual meetings, did not suffice to impute RICO liability. Notwithstanding that the firm made a critical, wrong decision that affected the solvency of the cooperative, and did not inform the board of directors about it, the *Reves* majority concluded that even this level of decision making did not rise to the level of directing an enterprise.

■ The case at bar represents our first opportunity to examine the "conduct or participate" requirement of § 1962(c) in the wake of *Reves v. Ernst & Young.* Pachl's involvement, the preparation of two letters in September, 1982, the preparation of a partnership agreement in 1982, and assistance in a March, 1987 Chapter 7 proceeding, in which he again sent two letters, does not suffice to impute liability under *Reves.* The allegedly fraudulent scheme began in 1976 and continued until 1987; Pachl's involvement did not begin until 1982 and his role thereafter was at best sporadic. Pachl at no time held any formal position in the limited partnership. Nor did he play any part in directing the affairs of the enterprise. Pachl's role was limited to providing legal services to the limited partnership and EPA. Whether Pachl rendered his services well or poorly, properly or improperly, is irrelevant to the *Reves* test. We are therefore compelled to conclude that under the *Reves* "operation or management" test the complaint fails to allege a § 1962(c) cause of action as to Pachl.[4] *See also Univ. of Md. at Balt., et*

---

4. Both appellants and appellees proffer in support *Ikuno v. Yip*, 912 F.2d 306 (9th Cir.1990) and *Sun Sav. and Loan Ass'n v. Dierdorff*, 825 F.2d 187 (9th Cir.1987). In *Ikuno*, we considered a RICO claim against an attorney and assessed the "pattern" requirement of § 1962(c). Because *Ikuno* concerned the interpretation of the "pattern" requirement, and not the "conduct or participate" requirement interpreted in *Reves*, *Ikuno* would appear unaffected in the wake of *Reves*.

*Sun Savings*, however, is arguably on different footing. In *Sun Savings*, we examined the "pattern" and "conduct or participate" requirements of § 1962(c). We reversed the district court's dismissal of a claim made by plaintiff savings and loan against its former president who sent four letters to government agencies and an outside auditor, allegedly in an effort to conceal a scheme in which he received kickbacks from

plaintiff's loan customers. In particular, we focussed upon the statement in the Supreme Court's *Sedima* opinion that the essence of a § 1962(c) violation " 'is the commission of those acts [of racketeering] *in connection with* the conduct of an enterprise.' " *Sun Sav.*, 825 F.2d at 195 (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). The district court found that because "the alleged mailings were not the conduct of the bank's affairs, but were instead conduct of Dierdorff's affairs," the claim was deficient in alleging the conduct of an enterprise. *Sun Savings*, 825 F.2d at 194. We reversed, holding that under the "connection" requirement, "the racketeering activity must in some way stem from the enterprise's activities or otherwise have some relationship to the enterprise." *Id.* at 195. We stated that the "connection" requirement is "satisfied if Dierdorff was able to commit the fraud

*al. v. Peat, Marwick, Main & Co.,* 996 F.2d 1534, 1539 (3d Cir.1993) (case decided after *Reves* wherein court stated that "[s]imply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result. There must be a nexus between the person and the conduct in the affairs of an enterprise. The operation or management test goes to that nexus.").

We are mindful of the fact that this basis for dismissal of the cause as to Pachl was not discussed by the district court. Nevertheless, given that we review the dismissal on a *de novo* basis we are free to conduct our inquiry on an independent basis. *Hoohuli v. Ariyoshi,* 741 F.2d 1169, 1177 (9th Cir.1984) ("[w]e may affirm the district court on any basis fairly supported by the record."). *Cf. Ikuno v. Yip,* 912 F.2d 306, 311 n. 3 (9th Cir.1990) (where we considered rule of law not considered by district court; the rule was eschewed by district court in motion to reconsider because plaintiff had not previously cited the case).

Next we consider the district court's dismissals of the RICO conspiracy actions as to Pachl and Yow. The complaint alleges as follows:

> GHE was at all times mentioned herein a California limited partnership formed by ERDY, EPA and PACHL, with the aid and assistance of and aided and abetted by YOW, for the purpose of perpetrating the scheme as defined herein. ERDY, EPA and PACHL, as aided and abetted by YOW, as hereinafter set forth, in further-

ance of the SCHEME sold limited partnership interests, through false and fraudulent representations in violation of Section 10(b), Securities Act of 1934, 15 U.S.C. Section 78j(b), Rule 10(b)(5), Securities and Exchange Commission Rules, and 18 U.S.C. Section 1341 (mail fraud), to not less than forty-five (45) limited partners, including plaintiffs.

The complaint as to Pachl alleges in pertinent part that Pachl "knowingly aided and abetted ERDY and EPA, in their conduct of the affairs of GHE through a pattern of racketeering activity in violation of Section 1962(d), Title 18 U.S.C....."[5]

At a hearing on the Rule 12(b)(6) motion, the district court found the allegation of conspiracy as to Yow deficient, stating:

> Where you drop the ball and, maybe, you can't say it, maybe you don't have enough evidence to say it, maybe you're concerned with Rule 11[,] ... is you don't have him under as part of the conspiracy ... Why would he—he has to intentionally overstate the value.... If he is part of this conspiracy to do this, allegedly, say so. If he is not, drop him out.

As to Pachl, the court concluded that there was "no evidence of any scheme that he's involved in." On these bases, the court dismissed the § 1962(d) claims against Yow and Pachl.

Section 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section." 18 U.S.C. § 1962(d)

---

by virtue of his position with or work for Sun or if the fraud was related to Sun's business." *Id.* We concluded in the affirmative insofar as when Dierdorff

> committed the alleged predicate acts of mail fraud, Dierdorff acted in his capacity as Sun's president. The acts of mail fraud were all related to the activities of Sun. Therefore, the complaint adequately alleges that Dierdorff conducted or participated in the conduct of Sun's affairs through a pattern of racketeering activity.

*Id.*

There is some question whether the narrow issue visited in *Sun Savings,* viz. the necessary degree of connection between the alleged racketeering activity and the activities of the enterprise, is affected by *Reves.* Nevertheless, it is

clear that Dierdorff's status as president of Sun Savings would satisfy the *Reves* "operation or management" test.

5. The Code defines "racketeering activity" as any act indictable under various provisions of Title 18, including § 1341 relating to mail fraud, § 1343 relating to wire fraud, and "any offense involving fraud connected with a case under Title 11, fraud in the sale of securities...." 18 U.S.C. § 1961(1). In light of the procedural posture of the instant case, and the fact that mail fraud is alleged as well, we reserve judgment on the question of whether the transactions involve "securities" as that term has been interpreted under federal securities law. *See, e.g., Rodriguez v. Banco Cent.,* 777 F.Supp. 1043, 1056–61 (D.P.R. 1991).

(1984 & Supp.1993).[6] In *United States v. Tille,* 729 F.2d 615, 619 (9th Cir.), *cert. denied,* 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984), we summarized the law as to § 1962(d) as follows:

> Proof of an agreement which is a substantive violation of RICO (such as conducting the affairs of an enterprise through a pattern of racketeering) is sufficient to establish a violation of section 1962(d). It is only when proof of such an objective is lacking that the evidence must establish the defendant's participation or agreement to participate in two predicate offenses.

The Seventh Circuit, in an expansive and scholarly treatment of what constitutes an agreement with regard to RICO conspiracy, stated as follows:

> From a conceptual standpoint a conspiracy to violate RICO can be analyzed as composed of two agreements (in reality they would be encompassed by the same manifestations of the defendant): an agreement to conduct or participate in the affairs of an enterprise and an agreement to the commission of at least two predicate acts. Thus, a defendant who did not agree to the commission of crimes constituting a pattern of racketeering activity is not in violation of section 1962(d), even though he is somehow affiliated with a RICO enterprise, and neither is the defendant who agrees to the commission of two criminal acts but does not consent to the involvement of an enterprise. If either aspect of the agreement is lacking then there is insufficient evidence that the defendant embraced the objective of the alleged conspiracy. Thus, mere association with the enterprise would not constitute an action-

able § 1962(d) violation. In a RICO conspiracy, as in all conspiracies, agreement is essential.

*United States v. Neapolitan,* 791 F.2d 489, 499 (7th Cir.), *cert. denied,* 479 U.S. 940, 107 S.Ct. 422, 93 L.Ed.2d 372 (1986) (footnote omitted). In addition, conspiracy to violate RICO requires a showing that defendant "was aware of the essential nature and scope of the enterprise and intended to participate in it." *United States v. Muskovsky,* 863 F.2d 1319, 1324 (7th Cir.1988), *cert. denied,* 489 U.S. 1067, 109 S.Ct. 1345, 103 L.Ed.2d 813 (1989).

■ The district court's conclusion that the thirty-nine page complaint is bereft of any allegation of "conspiracy" or "agreement" is well-taken. Nor are facts pled sufficient to infer such an arrangement. *See United States v. Gonzalez,* 921 F.2d 1530, 1539 (11th Cir.) ("[a] RICO conspiracy requires proof of an agreement to violate a substantive RICO provision."), *cert. denied,* —— U.S. ——, 112 S.Ct. 178, 116 L.Ed.2d 140 (1991); *United States v. Cauble,* 706 F.2d 1322, 1341 n. 64 (5th Cir.1983), (agreement is "vital" to RICO conspiracy claim), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984); *United States v. Bright,* 630 F.2d 804, 834 (5th Cir.1980) (there "must be proof that the individual, by his words or actions, objectively manifested an agreement to participate, directly or indirectly, in the affairs of an enterprise, through the commission of two or more predicate crimes."). A RICO conspiracy "requires the assent of each defendant who is charged, although it is not necessary that each conspirator knows all of the details of the plan

---

6. Subsections (a), (b), and (c), in pertinent part, provide as follows:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or thorough collection of an unlawful debt in which such person has participated as a principal ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(b) It shall be unlawful for any person through a pattern of racketeering activity or through

collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962 (1984 & Supp.1993).

or conspiracy." *United States v. Brooklier,* 685 F.2d 1208, 1222 (9th Cir.1982), *cert. denied,* 459 U.S. 1206, 103 S.Ct. 1194, 75 L.Ed.2d 439 (1983). Here, the bare allegations of the complaint provide no basis to infer assent to contribute to a common enterprise; therefore, even the liberal standard of *Brooklier* is not satisfied.[7] *See United States v. Valera,* 845 F.2d 923, 929 (11th Cir.1988) (emphasis in original) ("[a]ssociation, alone, with the enterprise is, of course, insufficient for violation of RICO: an individual must *agree* to participate in the affairs of the enterprise."), *cert. denied,* 490 U.S. 1046, 109 S.Ct. 1953, 104 L.Ed.2d 422 (1989).

On page 30 of their 32–page opening brief appellants relate without elaboration that "Aiding and abetting the primary malefactors is sufficient to impose liability under either section 1962(c) or 1962(d). *United States v. Pungitore,* 910 F.2d [1084] at p. 1131–1132 [ (3rd Cir.1990) ]." We note that there is some support among the Circuits for the imposition of aider or abettor liability in the civil RICO context. *See Petro–Tech, Inc. v. Western Co. of North America,* 824 F.2d 1349, 1357–58 (3d Cir.1987) ("[I]f all of RICO's other requirements are met, an aider and abettor of two predicate acts can be civilly liable under RICO.").[8] For some time the courts have found RICO liability on the basis of aiding and abetting in the criminal RICO context. *See, e.g., United States v. Rastelli,* 870 F.2d 822, 832 (2d Cir.) (union-related criminal racketeering action where court held that "[i]f a defendant agrees personally to commit, or to aid and abet the commission of, two predicate acts he may be convicted of a RICO conspiracy violation."), *cert. denied,* 493 U.S. 982, 110 S.Ct. 515, 107 L.Ed.2d 516 (1989); *United States v. Wyatt,* 807 F.2d 1480, 1482–83 (9th Cir.) (Government need not prove two predicate acts of racketeering in action charging aiding and

abetting investment of racketeering income in violation of the federal aiding and abetting statute, 18 U.S.C. § 2(a), and § 1962(a)), *cert. denied,* 484 U.S. 858, 108 S.Ct. 170, 98 L.Ed.2d 124 (1987); *United States v. Qaoud,* 777 F.2d 1105, 1107 (6th Cir.1985), *cert. denied,* 475 U.S. 1098, 106 S.Ct. 1499, 89 L.Ed.2d 899 (1986) (defendant properly convicted on substantive and conspiracy RICO offenses given evidence that he aided and abetted predicate acts involving bribery). We also note that positive reference in the form of *obiter dictum* was made to *Petro–Tech* in *Oscar v. Univ. Students Co-op Ass'n,* 939 F.2d 808, 809 n. 1 (9th Cir.1991), *rev'd,* 965 F.2d 783 (9th Cir.1992) (*en banc* ), *cert. denied,* —— U.S. ——, 113 S.Ct. 655, 121 L.Ed.2d 581 (1992).

This being said, the instant case does not require that we address whether appellants have stated a claim on the basis of aider or abettor liability. As noted above, the § 1962(c) claim against Pachl fails under the Court's interpretation of the recent *Reves* decision. Further, the complaint is legally deficient with regard to the § 1962(d) conspiracy-based claims against both Yow and Pachl because it fails to allege adequately that they acted in the capacities of *conspirators,* as opposed to *aiders or abettors.*[9]

For the foregoing reasons, the district court's dismissals of the RICO actions against appellees Yow and Pachl are

AFFIRMED.

---

**7.** Significantly, the district court provided appellants repeated opportunities to amend the complaint, opportunities not pursued.

**8.** In so finding, the Third Circuit failed to specify whether criminal or civil aiding and abetting concepts apply and more generally reserved judgment as to the "doctrine's reach or limitations." *Id.* 824 F.2d at 1357 n. 9.

**9.** *See United States v. Rone,* 598 F.2d 564, 570 (9th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980) (conspiracy to violate RICO and aiding and abetting a substantive RICO violation are separate and distinct offenses); *United States v. Bright,* 630 F.2d 804, 813 (5th Cir.1980) (same); *Onesti v. Thomson McKinnon Secur., Inc.,* 619 F.Supp. 1262 (N.D.Ill.1985) (same).