[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTIONS TO STRIKE
In the six-count complaint in this case the plaintiff alleges that he was subjected to false, disparaging and libelous statements by the defendants. The issue presented is whether the defendants' motions to strike the sixth count of the plaintiff's complaint, which alleges a violation of General Statutes §42-110a, the Connecticut Unfair Trade Practices Act should be granted as it fails to state a claim upon which relief may be granted. The court will grant the defendants' motions to strike since the defendants were not engaged in any, trade or commerce as required for a CUTPA cause of action.
 FACTUAL BACKGROUND
The complaint alleges the following facts. The plaintiff, Edward Anderson, is engaged in the business of renting and leasing apartments and houses in the New Haven area, both as an owner of certain properties and as an agent for other property owners. The defendants, Tara Harris, Ray Deck, Jelani Lawson, and Joshua Westlund, are undergraduate students at Yale University, all of whom are affiliated in some capacity with a monthly CT Page 8335 publication called "Rumpus: The Only Magazine at Yale about Stuff at Yale" (Rumpus). Rumpus is registered with the other defendant, Yale University (Yale), as undergraduate organization.
The complaint further alleges that as Rumpus is a student publication, the magazine is sold and distributed on the Yale campus with the consent of the university. The magazine's circulation, however, also reaches the greater New Haven area. Moreover, the plaintiff has extensive contact with Yale students in that he directs much of his renting activities toward them
In September of 1995, the defendants, Harris, Deck, Lawson and Westlund published Rumpus, volume four, issue one. In that edition, the magazine included an article concerning the plaintiff, and the plaintiff's business practices. The plaintiff claims, however, that the article was quite disparaging and contained numerous defamatory statements. In his complaint, the plaintiff lists a litany of allegedly libelous statements made or condoned by the defendants, which were directed both at him personally and at his business practices.
Following the publication of the article, the plaintiff requested that the defendants retract the article in the same manner in which it was published. Additionally, the plaintiff sent a letter to the Yale Dean of Student Affairs and asked that disciplinary action be taken against the co-defendants. In response to the plaintiff's requests, the plaintiff alleges that Yale university took no action and that it was months later when the defendants included an "Apology To Ed Anderson Page [four]," in the February, 1996, monthly edition of Rumpus.
The plaintiff claims that the defendant Lawson wrote the allegedly defamatory article in retaliation for the plaintiff's refusal to rent her an apartment. Finally, the plaintiff claims that, as a result of the article, he has suffered extensive damage to his reputation, he has been humiliated in the community, and he has suffered great mental anguish.
 LEGAL DISCUSSION
The defendants[1] move to strike the sixth count of the plaintiff's complaint on four grounds: (1) that CUTPA does not apply to claims of libel; (2) the allegations contained in the complaint fail to satisfy the third prong of the "cigarette rule;" (3) the complaint's allegations fail to allege a CT Page 8336 commercial relationship; and (4) the complaint's allegations fail to allege more than one impermissible act, a necessary requirement under General Statutes § 42-110a. The defendants maintain that the plaintiff's CUTPA claim fails to state a claim upon which relief may be granted, and the motion to strike should be granted.
The plaintiff argues in opposition to the defendants' motions to strike that a libel claim can form the basis for a CUTPA claim. The plaintiff also argues that he is not required to allege more than one instance of misconduct to maintain a claim under the CUTPA statute. Accordingly, the plaintiff argues that the defendants' motions to strike should be denied.[2]
"The purpose of CUTPA is to protect the public from unfair practices in the conduct of any trade or commerce . . . . "Willow Springs Condominium Assn., Inc v. Seventh BRT DevelopmentCorp., 245 Conn. 1, 42 (1998). "CUTPA, by its own terms, applies to a broad spectrum of commercial activity. The operative provision of the act, [General Statutes] § 42-110b
(a), states merely that [n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. Trade or commerce, in turn, is broadly defined as the advertising, sale or, rent orlease, the offering for sale or rent or lease, or thedistribution of any services and any property, tangible orintangible, real, personal or mixed, and any other article,commodity, or thing of value in this state. General Statutes § 42-110a (4)." (Emphasis added.) Id. As the court finds that the defendants were not engaged in any trade or commerce when the allegedly defamatory article was written, it is unnecessary to address the other arguments in the defendants' memorandum of law.
The reasoning employed by the Supreme Court in the case ofHaynes v. Yale-New Haven Hospital, 243 Conn. 17, 699 A.2d 964
(1997), is applicable to the present case. In that case, the plaintiff's decedent was involved in a severe motor vehicle accident. The decedent was rushed to Yale-New Haven Hospital (Yale-New Haven) where emergency medical care was administered. Approximately two hours after the initial care, the decedent began to suffer additional complications. Consequently, the individual was taken to the hospital's emergency room where emergency surgery was performed; during the surgery, however, the decedent went into cardiac arrest and could not be revived. As a result, the plaintiff administratrix brought an action against CT Page 8337 both the attending surgeon and Yale-New Haven, alleging medical malpractice and CUTPA violations. Id., 19. With respect to the CUTPA count alleged against Yale-New Haven, the plaintiff alleged that the defendants failure to provide medical treatment to the decedent commensurate with the applicable standards of care in the medical profession resulted in the decedent's death. Id. 21.
The trial court had granted Yale-New Haven's motion for summary judgment on the plaintiff's CUTPA claim because it reasoned that a "malpractice claim cannot be recast as a CUTPA claim," and it was therefore legally insufficient." Haynes v.Yale-New Haven Hospital, supra, 243 Conn. 22. The Connecticut Supreme Court, affirmed the trial court's decision, and held that "professional negligence — that is, malpractice — does not fall under CUTPA. Although physicians and other health care providers are subject to CUTPA, only the entrepreneurial orcommercial aspects of the profession are covered, just as only the entrepreneurial aspects of the practice of law are covered by CUTPA." (Emphasis added.) Id., 34. The court reasoned that claims which are based upon the competence of the practitioner, but not on the entrepreneurial aspects of the defendant's occupation, are not covered under the CUTPA statute for public policy reasons.Id., 34-35. "This public policy consideration requires us to hold that CUTPA covers only the entrepreneurial or commercial aspects
of the profession of law [and medicine]. (Emphasis added.) Id., 35.
In describing what constitutes the entrepreneurial or commercial aspects of profession, the Supreme Court cited language from cases in other jurisdictions with analogous state consumer protection laws. "Washington has recognized that both the practice of law and medicine may give rise to [consumer protection act] claims. . . . These may arise, however, only when the actions at issue are chiefly concerned with `entrepreneurial' aspects of practice, such as the solicitation of business andbilling practices, as opposed to claims directed at the competence of and strategy' employed by the . . . [defendant]." (Emphasis added; internal quotation marks omitted.) Haynes vYale-New Haven Hospital, supra, 243 Conn. 35-36, citing Ikuno v.Yip, 912 F.2d 306, 312 (9th Cir. 1990).
Moreover, the Connecticut Appellate Court has held that no valid CUTPA cause of action exists between an employer and employee when the employee makes" no [allegations] in the complaint that the [employer] advertised, sold, leased orCT Page 8338distributed any services or property to the [employee]." (Emphasis added.) Quimby v. Kimberly Clark Corporation,28 Conn. App. 660, 670, 613 A.2d 838 (1992). Finally, then Judge McDonald (now Justice), in holding that no CUTPA violation was present against a television station for broadcasting allegedly defamatory remarks about a priest stated, "the relationship here is not between a consumer and a commercial vendor but between a person named in a telecast and the media. There is no allegation in the complaint that Channel [eight] advertised, sold, leased or distributed any services or property to [the plaintiff]." Casciav. Cook Inlet Communications Co., Superior Court, judicial district of Waterbury, Docket No. 109126 (November 29, 1993, McDonald, J.) (10 CONN. L. RPTR 429, 9 C.S.C.R. 47).
In the present case, the defendants were engaged in the dissemination of information through the medium of the written word. The defendants were not engaged in any activity that could be characterized as advertising, selling, leasing or distributing any services or property to this particular plaintiff. Accordingly, the court finds the reasoning and holding of Haynesv. Yale-New Haven Hospital, supra, persuasive and controlling.
The defendants in this case were performing their primary function as journalists when the allegedly actionable conduct occurred; that is, the defendants were writing articles of purportedly public concern. Therefore, in the event that the plaintiff can prove that the defendants' statements were inaccurate, false, or otherwise unwarranted, the plaintiff may have a proper claim for libel. Yet, just as the doctor or lawyer cannot be held liable for a CUTPA violation based on malpractice, which does not implicate billing or solicitation, so too must the reasoning extend to journalists. "[I]t would be a dangerous form of elitism, indeed, to dole out exemptions to our [consumer protection] laws merely on the basis of the educational level needed to practice a given profession, or for that matter, the impact which the profession has on a society's health and welfare." (Internal quotation marks omitted.) Haynes v. Yale-NewHaven Hospital, supra, 243 Conn. 38. A journalist essentially commits "malpractice" when the article that the journalist publishes concerning a person or entity is not true, reckless as to the truth or falsity of the statements, or negligent as to the veracity of the article. See New York Times v. Sullivan,376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); Woodcock v. JournalPublishing, Co., 230 Conn. 525, 646 A.2d 92 (1994). If, however, the journalist was not engaged in any solicitation or business CT Page 8339 activity with the individual allegedly defamed through the publication of the article, then no CUTPA violation has occurred.
In the present case, the complaint alleges no facts that the defendants were engaged in any business activity with the plaintiff in which services, goods or property were leased, sold or advertised to this plaintiff. The plaintiff's allegations that the article was written in retaliation for his refusal to rent an apartment to the author does not change the analysis; the fact remains that the defendants did not solicit, advertise or engage in any commercial relationship with the plaintiff through the publication of the article.
It is imperative that the distinction between the commercial and business aspects of journalism, vis-a-vis, the literary, artistic and speech attributes of the profession be maintained. The alleged relationship here is not one of consumer and commercial vendor, but rather one of adversaries in a libel action.
Accordingly, the court will grant the defendants' motions to strike the sixth count of the plaintiff's complaint on the ground as the defendants were not engaged in trade or commerce, and therefore the plaintiff's sixth count fails to state a claim upon which relief may be granted.
 CONCLUSION
Based on the foregoing, the defendants' Motions to Strike (#113 and #114.50) are granted.
HARTMERE, J.