76 F.3d 388
 Fed. Sec. L. Rep. P 99,039
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 SECURITIES INVESTOR PROTECTION CORPORATION, Plaintiff,
and
Eugene W. Bell, Trustee for the Liquidation of Joseph Sebag,
Inc., & Nicholas E. Christian*, Second
Successor Trustee for the Liquidation of First State
Securities Corporation, Plaintiffs-Appellants,
v.
Robert G. HOLMES, Jr.; Aero Systems, Inc.; Habers, Inc.;
Haberico Inc.; Habers, Inc. Defined Benefit
Pension Trust, Defendants-Appellees,
and
Seymour Vigman & Nettie Vigman; Martin Blumenthal, Defendants.
 
 1
 No. 94-56468.
 
 
 2
 United States Court of Appeals, Ninth Circuit.
 
 Argued and Submitted Dec. 12, 1995.
Decided Jan. 23, 1996.
 
 3
 Before: FARRIS and RYMER, Circuit Judges, and SINGLETON, District Judge**
 
 
 4
 MEMORANDUM***
 
 
 5
 Eugene W. Bell and Nicholas E. Christian, as Trustees of First State Securities Corp. (FSSC) and Joseph Sebag, Inc. (Sebag) pursuant to the Securities Investor Protection Act (SIPA), 15 U.S.C. §§ 78aaa et seq., appeal the district court's summary judgment on their claims against Robert G. Holmes, Jr. and Jack A. Haber, Habers, Inc., Haberico, Inc., and Habers, Inc., Defined Benefit Pension Trust (Habers) under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, common law fraud, and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 et seq.[1] The district court held that Trustees could not establish reliance on the alleged fraudulent manipulation scheme because certain insiders at FSSC and Sebag knew of the fraud and that knowledge was imputed to FSSC and Sebag and to Trustees standing in their shoes.
 
 
 6
 Since the district court's decision, the Supreme Court has rendered its opinion in Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 114 S.Ct. 1439 (1994) and we have rendered ours in In re GlenFed, Inc. Securities Litigation, 60 F.3d 591 (9th Cir.1995). These opinions control the Trustees' claims based on secondary liability as conspirators or aiders and abettors. Likewise Reves v. Ernst & Young, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993) forecloses the Trustees' RICO claims because there is no evidence that either Holmes or Habers participated in the "operation or management" of either of the purported RICO enterprises.
 
 
 7
 We therefore affirm.
 
 
 8
 * Trustees primarily argue that the district court erred in holding that they cannot show justifiable reliance because of the knowledge of the broker-dealers' insiders. Holmes and Habers contend that the district court correctly imputed the controlling officers' knowledge to the firms, but that its judgment must be affirmed in any event because Trustees have not pursued a theory of individual liability and the combination of Central Bank, GlenFed, and Reves, precludes liability on any other theory. Trustees distinguish Central Bank on the footing that Holmes and Habers personally committed securities violations in addition to working in concert with the remaining members of the scheme. In turn, they note that aiding and abetting principles apply to civil RICO violations, and that Reves doesn't preclude liability here because Holmes and Habers actively participated in the scheme.
 
 
 9
 In the wake of Central Bank, we held that Section 10(b) and Rule 10b-5 do not create a private right of action for secondary liability claims of either aiding and abetting or conspiracy. GlenFed, 60 F.3d at 592. Thus, to the extent that Trustees' 10b-5 claims are premised on liability as coconspirators rather than as primary violators, they fail.
 
 
 10
 As we read the record, Trustees have pursued a theory of secondary liability. In their brief opposing Holmes's and Habers' summary judgment motions, Trustees stated that their 10b-5 claims "do not rest, as [Holmes and Habers] contend, on the acts of Holmes, Haber ... in isolation [but rather] are ones of concerted action in which separate acts of any one conspirator must be examined in connection with the acts of every other conspirator and the objectives of the conspiracy as a whole." Trustees repeatedly argued that their theory of liability was identical to the one addressed by this court in Vigman III, which dealt solely with Holmes's potential liability (under RICO) as a coconspirator. Further, Trustees' opening brief on appeal asserts that "Holmes did not act alone but was part of a conspiracy that included the other defendants in this action," and stresses that "Holmes participated in a conspiracy to manipulate the prices of the securities." In the same vein they maintain that "Holmes assisted the conspiracy through his control of Aero Systems," and "Holmes also assisted the conspiracy by trading [Bunnington] stock through Lugo ... [and by passing] on false information regarding a new Bunnington product," and Holmes acted "in tandem" with Lugo and Garrity in manipulating the Aero stock price.
 
 
 11
 Trustees' description of Habers' involvement is similar. For example, they contend that Habers had accounts at FSSC, Sebag and other broker-dealers that "were used" to conduct trading in securities to create an appearance of active trading volume "as part of the fraudulent scheme to manipulate" and that these accounts "also were used in parking transactions" to conceal FSSC's net capital deficiency. Their expert opined that it was Lugo and Garrity who used Habers' accounts to manipulate the securities and that Habers "passively consented," which "aided" and "enabled" Lugo to manipulate the stocks; and that "Haber permitted his accounts to be used by Lugo ... to artificially inflate the trading price ... as well as to permit the parking of securities" and "assisted Rodger Garrity ... in a similar capacity."
 
 
 12
 We conclude that because Trustees' securities claims sound in conspiracy or aiding and abetting, they are barred. Even if there is a primary liability claim lurking in the record, however, it is unavailing for two reasons. The district court previously ruled that Holmes didn't cause the broker-dealers' failure.[2] As we explain in Vigman V, that ruling remains intact.[3] Regardless, Trustees have abandoned any theory of primary liability by focusing exclusively on secondary liability on appeal. USA Petroleum Co. v. Atlantic Richfield Co., 13 F.3d 1276, 1284 (9th Cir.1994) (party cannot revisit theories raised but abandoned); Greater Los Angeles Council on Deafness, Inc. v. Zolin, 812 F.2d 1103, 1115-16 (9th Cir.1987) (issue waived by failing to press it adequately).[4]
 
 II
 
 13
 Section 1962(c) reaches only those persons who are involved in directing the affairs of the enterprise. Reves, 112 S.Ct. at 1170. Although Trustees argue that Habers actively participated in the scheme, the evidence they point to falls short of the mark. It shows only that Habers controlled its own accounts at various brokerage firms and permitted parking and strategic trading by others.
 
 
 14
 Trustees' reliance on pre-Reves cases is unpersuasive, as there is nothing in the record to suggest that either Holmes or Habers participated in the "operation or management" of the enterprise itself as Reves requires. Id. at 1173. Perhaps recognizing the difficulty Reves poses for their claim, at oral argument Trustees suggested that the relevant RICO enterprise is not FSSC and Sebag, but an association in fact of the various individuals and entities that participated in the stock manipulation scheme. They offer no authority in support. Cf. Reves, 113 S.Ct. at 1173 (enterprise may be "operated" or "managed" by outsiders "associated with" the enterprise "who exert control over it as, for example, by bribery").
 
 
 15
 We can divine no triable issue of fact as to whether Holmes or Habers participated in the "operation or management" of FSSC or Sebag. As Trustees concede, Lugo and Garrity were the "key" defendants and Vigman held the "de facto leadership role." Holmes and Habers were customers who exerted control only over their own accounts, not over the operation or management of the enterprise as a whole. Trustees' contention that by placing trades (or allowing others to place trades) in their own accounts at FSSC and Sebag, Holmes and Habers participated in the "operation or management" of the firms proves too much. Under Trustees' theory, each and every bank depositor who transfers funds into or out of his or her account would also qualify as a participant in the operation or management of the operation. Reves requires more. Baumer v. Pachl, 8 F.3d 1341, 1343-45 (9th Cir.1993) (attorney who helped prepare letters and partnership agreement, and assisted in a bankruptcy proceeding, did not meet Reves "operation or management" test, as he held no "formal position in the limited partnership" and did not "play any part in directing the affairs of the enterprise"); see also Morin v. Trupin, 832 F.Supp. 93 (S.D.N.Y.1993) (holding that law firm's power to induce management to take certain actions was not equivalent to power to conduct or participate directly or indirectly in conduct of affairs of those corporations); Amalgamated Bank of New York v. Marsh, 823 F.Supp. 209 (S.D.N.Y.1993) (holding that defendant that allegedly permitted bank to deposit embezzled funds into its own account did not conduct or participate in the operation or management of the bank's affairs for RICO purposes). In short, Holmes's and Habers' "active participation" in the scheme to defraud does not equate to "participat[ion] in the operation or management of the enterprise."
 
 
 16
 Trustees also argue that regardless of their primary liability, Holmes and Habers may be held liable under § 1962(c) if they have aided and abetted the conduct of a RICO enterprise. Even if aiding and abetting a primary violator is sufficient, but see Baumer, 8 F.3d at 1347, Trustees's voluminous complaint does not allege "aiding and abetting" a RICO violation.
 
 
 17
 Finally, because there is no primary violation of RICO, or participation or agreement to participate in a predicate offense, there is no basis for holding Holmes and Habers liable for conspiracy in violation of § 1962(d).
 
 
 18
 AFFIRMED.
 
 
 
 *
 Pursuant to Fed.R.App.P. 43(a), Nicholas E. Christian is substituted for the deceased Laurence A. Schroeder, as Second Successor Trustee for the Liquidation of First State Securities Corporation
 
 
 **
 Honorable James R. Singleton, United States District Judge for the District of Alaska, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 This appeal has been consolidated with the appeal in Securities Investor Protection Corp. v. Vigman, No. 94-56355 (9th Cir. Jan. 23, 1996) (Vigman V ) (slip opinion forthcoming)
 
 
 [2]
 Summary judgment in favor of Habers was subsequently entered on the same grounds as Holmes
 
 
 [3]
 Trustees' common law fraud claims fall for the same reason
 
 
 [4]
 Trustees have also waived reliance on predicate acts of mail and wire fraud, as these theories were not developed in the district court