## STULL v. PORTER et al.

(184 Pac. 260; 196 Pac. 1116.)

**Appeal and Error—Judgment Against Codefendant not Ground for Appeal by Other Defendant.**

1. Where a justice rendered judgment against two defendants for a tort, but only one appealed to the Circuit Court, which rendered judgment against such appealing defendant alone, the nonappealing defendant cannot complain on appeal to the Supreme Court of the terms of the Circuit Court's judgment against his codefendant, and his appeal to the Supreme Court will be dismissed.

**Judgment—Against Defendants Sued for Tort may be as to One or More.**

2. In an action for tort, defendants may be liable jointly or severally, and, under Section 180, L. O. L. judgment may be given for or against one or more of them, while, under Section 181, in its discretion the court may render judgment against one or more, a several judgment being proper, leaving the action to proceed against the other.

**Judgment—Though Separate Against Joint Tort-feasors There can be but One Recovery.**

3. Though plaintiff has two judgments against the two defendants for their tort, she can enjoy only one recovery.

ON THE MERITS.

**Torts—Person not Liable as Joint Tort-feasor by Ratification Unless Act Done for His Benefit and He Approved.**

4. To render a person liable as a joint tort-feasor by ratification, there must be evidence tending to show that the wrongful act was done for his benefit and that he approved it.

**Animals—Evidence Held to Show Killing of Dogs by Joint Wrong-doers.**

5. In an action against claimed joint tort-feasors for killing plaintiff's dogs, evidence *held* to justify finding that defendant against whom judgment was rendered was acting in concert with the other defendant, his partner, when the dogs were killed by such other.

From Coos: JOHN S. COKE, Judge.

In Banc.

On motion to dismiss appeal as to Roscoe Bunch. APPEAL DISMISSED AS TO APPELLANT BUNCH.

*Mr. T. T. Bennett* and *Mr. B. Swanson,* for the motion.

*Mr. John D. Goss, Mr. John C. Kendall* and *Mr. Herbert S. Murphy, contra.*

BURNETT, J.—The plaintiff brought an action in a Justice's Court against the defendants Porter and Bunch, charging them with the tort of killing her two dogs, laying her damages in the sum of $250. The result of a jury trial there was a verdict and consequent judgment against them for the full amount claimed. Porter alone appealed to the Circuit Court and did not serve his notice upon his codefendant. Bunch did not appeal. At the trial in the Circuit Court the plaintiff ignored Bunch and proceeded as if Porter were the only defendant entitled to be heard there, obtaining a judgment against Porter alone for the full amount of damages claimed. Both defendants have appealed from the Circuit Court judgment to this court.

1. The case is now before us on the plaintiff's motion to dismiss the appeal of Bunch. The justice's judgment was rendered by a court having jurisdiction both of the subject-matter and of the persons of the defendants. Either defendant had a right to appeal to the Circuit Court and unless he served his codefendant as well as the plaintiff, Porter could not bind Bunch by his appeal. The latter had a right to be satisfied with the judgment in the Justice's Court. Of course, if Porter's appeal would adversely affect the interest of Bunch, Porter could not carry it on without having served Bunch with notice and thus made him a party to the appellate procedure. On the other hand, if Bunch wished to appear in the Circuit Court on the appeal and participate therein, he was obliged to adopt the method prescribed by the statute, which is to serve his notice and give the undertaking required. Moreover, the judgment of the Circuit Court is not against Bunch, but against Porter only. As he is not affected by its terms, Bunch has no cause of complaint in this court. In short, he did not pursue the formula necessary for him to gain admission into the Circuit Court. He was a stranger to the proceedings there, not only on account of his neglect but also because the judgment of the Circuit Court is not against him and does not affect his interest. Hence, he has no standing in this court.

Opposing the motion to dismiss, the defendants rely upon *Cauthorn* v. *King,* 8 Or. 138. There, Cauthorn sued the defendants in the Justice's Court in trover and obtained a judgment against Bell alone. The case was decided here on a construction of the record showing that both defendants answered in the Justice's Court and that they both appeared in the Circuit Court. But how they both appeared is not stated

in the opinion. It is urged that because on appeal from the Justice's Court the cause is heard anew upon the issues tried in the court below, Section 556, L. O. L., the appeal by one party brings up the case as to all parties, whether served or not. This construction would mean that the costs and expenses of an appeal could be visited upon a codefendant against his will, and also that any defendant could get the benefit of an appeal by a codefendant without tendering any security or undertaking for such an appeal. As stated in *Claggett* v. *Blanchard,* 8 Dana (Ky.), 41, cited here on behalf of Bunch:

"We consider it entirely certain that the legislature did not intend to require or authorize the Circuit Court, upon an appeal by one defendant who had been served with the justice's warrant, to try the case and give judgment against another, who had neither been served with the warrant, nor appeared in the Circuit Court, nor been summoned to do so; and neither this nor any other statute, nor any known practice authorizes that court to issue a summons or other process against a person thus situated."

The Kentucky statute alluded to provided in substance that one or more of several individuals against whom a judgment is rendered by a justice may appeal, that such appeal by one shall place the cause for trial in a court of appeals, as fully as if taken by all, and that such court shall proceed therein and render "judgment between all those who were parties to the judgment of the justice." If, under such a statute, relating not only to issues but also to parties, the court will decline to take notice of a party who is not subject to its process, much more must we decline in a case like this before us to entertain the appeal of a party who is not affected by the judgment appealed from and who was not before the court rendering it.

The case indeed is heard in the appellate court on the issues involved in the inferior court, but only as they affect the parties to the appeal. A different case might be presented if the action were one in which only a joint judgment or none could be rendered against the defendants. Under such conditions we would be compelled to decline to hear even the appealing defendant unless he had served his notice of appeal not only upon the plaintiff but also upon his codefendant.

2. Since this is an action for tort, the defendants may be liable jointly or severally, and under Section, 180, L. O. L.; "judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants." Further, in Section 181, L. O. L., it is said:

"In an action against several defendants the court may in its discretion render judgment against one or more of them, whenever a several judgment is proper, leaving the action to proceed against the other."

It did not necessarily follow, therefore, that because the parties were sued jointly the only result would be a joint judgment. There was, however, a joint judgment in the Justice's Court, from which either party defendant had a right to appeal. Inasmuch as his appeal could not make worse the situation of his codefendant, Porter had a right to pursue his own remedy without compelling his codefendant to participate. Being thus left out of the appeal, if Bunch had wished to gain the benefit of such procedure, he ought to have initiated one on his own behalf and entered the Circuit Court by the statutory door thus provided for him. Since he did not pursue this course, Bunch was not properly before the Circuit Court and that tribunal could not render any

judgment for or against him. It had a right to consider the appeal of Porter and render judgment according to the merits of the case as presented respecting him, with the right reserved to Porter, the party to that judgment, to appeal to this court. Bunch was a stranger to the portion of the proceeding occurring after the lapse of the period in which he was entitled to appeal to the Circuit Court.

3. It is argued that the result is that the plaintiff has two judgments for the same demand. However, this may be, she can enjoy only one recovery. The rights of the parties in that matter can be worked out by post-judgment procedure.

The motion to dismiss the appeal of Bunch is allowed.

APPEAL DISMISSED AS TO APPELLANT BUNCH.

Affirmed April 12, 1921.

ON THE MERITS.

(196 Pac. 1116.)

From Coos: JOHN S. COKE, Judge.

Department 2.

As the owner of a collie dog named Trixie and of a shepherd and collie known as Ranger, the plaintiff, on January 9, 1919, commenced an action against the defendants, in the Justice Court, District No. 2, County of Coos, in which she alleged that they did "unlawfully, willfully, and maliciously" kill the dogs, and prayed for judgment for $250. The defendants Porter and Bunch filed an amended joint answer, in which they denied all of the material allegations of the complaint, or that the dogs were of any value. A jury trial was had, at which neither of the

defendants testified, and a verdict was found for the plaintiff and against both defendants, for the full amount of her claim, upon which judgment was entered. From this judgment the defendant Porter appealed to the Circuit Court, where the cause was tried on March 3, 1919. After the jury was sworn, the attorney for the plaintiff stated that—

"This is a joint tort, and we claim the rule of law is that anyone who aids or conspires in the commission of an act is responsible. We shall prove that Porter did aid and conspire, and we are proceeding upon the theory that a joint tort was committed."

At this trial the defendant Bunch testified that he alone shot the dogs, and that the defendant Porter had nothing to do with the killing of them. Among other instructions to the jury, the court gave the following:

"You are instructed that a joint tort is alleged, and if the defendant, Tom F. Porter, aided, commanded, advised, or countenanced the killing of either one or both of these dogs, or if the defendant, Tom F. Porter, approved of it, after it was done, if it was done for his benefit, he would be liable in the same manner and to the same extent, as if he had done the actual killing with his own hands. But the mere knowledge that a tort is being committed against another, will not be sufficient to establish liability. That is, the meaning of that rule as applied to this case would be, that a mere knowledge on the part of Tom Porter, that a tort had been committed by Rosco Bunch, would not render Porter liable. Nor will the mere presence of a person at the commission of a tort or wrongful act by another, render him liable as a participant. Mere acquiescence in the commission of a tort, after the act, does not make the party acquiescing therein liable therefor, since to be liable, he must not only assent to the wrong, but the act must have been done for his benefit, or have been of a

nature to have benefited him. Ratification would not be established from mere knowledge, approval, or satisfaction. To hold one responsible for a tort not committed by his orders, his adoption of and assent of the same must be clear and explicit and founded on a clear knowledge of the tort which has been committed.

"If you find the defendant, Tom F. Porter, was actively engaged or actually participated in the killing of the dogs, or either of the dogs, then the court instructs you that he would be liable to the plaintiff for whatever damage she has suffered by reason of his acts, or, if you should find that he aided, commanded, advised, or countenanced the killing of one or both of these dogs, or that he approved of it after it was done, if it was done for his benefit, then he will also be liable for whatever damages the plaintiff has suffered by reason of his acts. If, on the other hand, the defendant Porter did not participate in the killing of the dogs, and did not aid, command, advise or countenance the killing of them, or did not approve of the killing after it was done, or that it was done for his benefit, then the defendant Porter would not be liable. In other words, he must have participated in the killing, or aided or abetted or countenanced the killing of the dogs, or one or both of them."

This jury returned a verdict against defendant Porter for the full amount, upon which judgment was entered, from which Porter appeals, assigning as error the giving of the above instructions, contending that in a willful tort there can be no liability unless there was a concert of action and that "the doctrine of ratification of torts does not apply to a willful tort such as the killing of animals," and that "it was error to instruct on a point not covered by the evidence" or "to give contradictory instructions." Other assigned errors were waived.

AFFIRMED.

For appellant there was a brief over the names of
*Mr. John D. Goss, Mr. John C. Kendall* and *Mr. Herbert S. Murphy,* with an oral argument by *Mr. Goss.*

For respondent there was a brief over the names of
*Mr. T. T. Bennett* and *Mr. Ben Swanson,* with an oral
argument by *Mr. Bennett.*

JOHNS, J.—Bunch having shot the dogs, it is the
theory of the defendant that there is no proof that
Porter and Bunch were acting together, and that
"there is no evidence of ratification by Porter or that
the killing was done for his benefit." The instructions followed *Perkins* v. *McCullough,* 36 Or. 146
(50 Pac. 182), in which, as to the liability of joint
tort-feasors, this court held that—

"All persons who aid, command, advise, or countenance the commission of a tort, or approve it, after
it has been committed, if for their benefit, are as fully
liable as if they had personally committed the objectionable act."

The question there presented was, whether there
was any evidence from which the jury could reasonably find that Matlock and the defendant B. F. McCullough acted in concert with reference to the alleged
conversion. The case grew out of a fraudulent sale
of cattle, from which Matlock received the proceeds
and applied them upon a debt. Upon the facts there,
the court says:

"While the sale may have been for Babb's benefit,
so far as the proceeds derived therefrom reduced his
indebtedness, it also benefited Matlock to the extent
of reducing his demand by the sum so received. He
was in possession of the cattle when they were sold,
and, the proceeds thereof having been paid to him, the
jury might fairly and legitimately infer from the
averment of the answer, when considered in connec-

tion with the other facts and circumstances of the case, that the sale was made for his benefit, and that, by accepting the proceeds thereof, he was cognizant of and approved the conversion, thereby rendering himself liable as a joint trespasser."

The decision in *Perkins* v. *McCullough* is founded upon the case of *Judson* v. *Cook,* 11 Barb. (N. Y.) 642. In that case, the president of a bank at whose suit an attachment had been issued and levied upon the property of the defendant therein, when applied to by the constable for directions in regard to selling the property, told him to do his duty and directed the attorney of the bank to examine the question and the facts in relation to a prior lien upon the goods and to act upon his judgment. Whereupon the attorney instructed the constable to sell the goods, and the president of the bank attended the sale and bid off a part of the property. It was there held that—

"This was sufficient to connect the president with the taking or detaining of the goods, and that he was liable in an action therefor."

1 Cooley on Torts (3 ed.), page 213, is as follows:

"When several participate, they may do so in different ways, at different times, and in very unequal proportions. One may plan, another may procure the men to execute, others may be the actual instruments in accomplishing the mischief, but the legal blame will rest upon all as joint actors. In some cases one may also become a joint wrongdoer by consenting to and ratifying what has been done by others. But this cannot be done by merely approving a wrong, or by expressing pleasure, or satisfaction at its being accomplished.

"In order to constitute one a wrongdoer by ratification, the original act must have been done in his interest or been intended to further some purpose of his own."

At page 244, the author says:

"All who actively participate in any manner in the commission of a tort, or who command, direct, advise, encourage, aid or abet its commission, are jointly and severally liable therefor. All who aid, advise, command, or countenance the commission of a tort by another, or who approve of it after it is done, are liable, if done for their benefit, in the same manner as if they had done the act with their own hands; and proof that a person is present at the commission of the trespass without disapproving or approving of it, is evidence from which, in connection with other circumstances, it is competent for the jury to infer that he assented thereto, lent to it his countenance, and approved it, and was thereby aiding or abetting the same. One who in any manner indicates his desire that an act be done may be said to request it; and who does anything in furtherance of an act may be said to aid or abet it."

Applying such law to the facts in the instant case, the plaintiff was the owner of the dogs, and proof of their value is conclusive. At the time of the killing, the defendants were friends and partners engaged in getting out ship-knees on the opposite side of the West Fork of Coos River from the place where the dogs were killed. The defendants testified that about 11:30 A. M. they started across the river in a rowboat to go to Porter's home for their lunch. About midway of the stream, they saw a wild deer, which plaintiff's dogs were chasing, whereupon, they increased their speed and landed their boat on the side of the river near where the dogs were running the deer. The defendant Bunch testified that after landing he went a short distance to what is known as the "applehouse," where he got his rifle; that he then went up the hill, and that he fired six or seven shots, killing the dogs. Defendant Porter testified that upon get-

ting out of the boat he picked up a club, went up the hill and down the river for the purpose of intercepting the dogs and stopping the chase; that he came very near to them, and that one of the dogs was close behind the deer; that he did not speak to them or do anything to call them off; that the deer and the dogs made a short circle and he then heard the shots, and that in four or five minutes he returned to the landing and found Bunch there. Bunch testified that he brought his rifle with him to the boat. Porter said that he did not see Bunch with the gun. Both testified that after their return to the boat nothing was said by either of them about the deer, the dogs, the shooting, or as to who fired the shots. If their testimony is true, upon their return to the boat they became like the proverbial clam or the meek and lowly oyster. The dogs were chasing the deer, and they were killed on Porter's lands. There is strong evidence tending to show that he had said he would kill any dog that he ever caught chasing deer, and that a number of dogs in the community had recently been killed.

1. To render a person liable as a joint tort-feasor by ratification, there must be evidence tending to show that the wrongful act was done for his benefit, and that he approved it.

2. On cross-examination concerning the dogs, the defendant Porter testified:

"Q. She [meaning Trixie] was a nuisance?

"A. Yes, sir.

"Q. Just the same as Ranger?

"A. Yes, sir.

"Q. And you thought it was a perfectly good way of getting rid of her and that it was a good job?

"A. Yes, sir. Whoever killed her."

Exclusive of the fact that Porter had said he would kill any dog found chasing deer, and he saw the dogs running a deer on his premises, and that he said the dogs were "a nuisance," there is no evidence that he would have derived any special, direct, or pecuniary benefit from the killing of them, or that he had any greater interest in the matter than any other person in the community. It was not his deer that the dogs were chasing, and no personal damage was done to him. The benefit which the law contemplates must be something special, pecuniary, other and different from that which is derived by the general public. Tested by this rule, appellant contends that there is no evidence tending to show that the dogs were killed for the benefit of Porter, and that the jury should not have been instructed that "the act must have been done for his benefit, or have been of a nature to have benefited him." The evidence is conclusive that the killing of the dogs did meet with his hearty approval. That appears from his own testimony. Defendants had left their work to cross the river and go home for lunch, and they first saw the dogs when the boat was in about the middle of the stream. They hurried across and landed the boat. Bunch went to the apple-house, got his rifle, went above, on the hill, and in a few minutes shot the dogs, about 150 yards from the place where the boat was landed. On leaving the boat, the defendant Porter picked up a club and went up the hill and down the river in an opposite direction, with a view, as he says, of intercepting the dogs and stopping the chase; yet, although he was close to them, he did not speak, or call the dogs, or try to stop them. The testimony indicates that the defendants were not away from the boat more than ten minutes. It is shown that the bullets which killed the

dogs were shot from the shells of the same size that were used in Bunch's gun. Porter's house, to which they were going for lunch, was on the hill, a very short distance above the place where the dogs were killed, and yet, after the killing they returned below to the boat and again went back up the hill to Porter's house. Although it is true that they claim to have returned to get some tools, the stubborn fact remains that they did speed up the boat; that when they landed Bunch went direct to the apple-house, got his gun and shot the dogs; that the defendant Porter picked up a club and went in another direction; that soon after the killing, both Bunch and Porter returned to the boat, after which they again went up the hill to Porter's home for lunch. This evidence, coupled with the fact that Porter had previously said that he would kill any dog found chasing deer, that the dogs were a nuisance, that "whoever killed her it was a good job," the further fact that his premises joined those of the plaintiff, together with his own conduct, his evasive answers, his attempt to conceal the killing, and the nature of his testimony, with all the surrounding facts and circumstances, is strong proof from which the jury could well have found that Porter was acting in concert with Bunch at the time the dogs were killed. Again, the evidence is undisputed that the dog Ranger was shot over the right eye and that the bullet came out on the right shoulder; that Trixie was shot in the "sticking place," and that the bullet came out near the tail-bone. Such physical facts tend strongly to support the theory of the plaintiff that the dogs were not shot while running the deer, and that Trixie was killed while sitting on her haunches.

The amount involved is not large, but we have read the testimony in this case with care, and we are con-

vinced from the record that Porter and Bunch were acting in concert in the killing of the dogs, and that any error in the instruction upon the question of benefit was not prejudicial to Porter.

The judgment is affirmed.

AFFIRMED.   REHEARING DENIED.

BEAN, J., concurs.

BROWN, J., concurs in result.

BURNETT, C. J., dissents.

---

Motion to dismiss appeal filed November 22, overruled December 14, 1920.