**COOPER INDUSTRIES, INC., COOPER TOOLS DIVISION, Plaintiff,**

v.

**LAGRAND TIRE CHAINS, Lagrand Companies, Lagrand Industrial Chain Supply, Lagrand Traction Products, Lagrand Protection Chains, Lagrand Shoe Chains, Lagrand Skidder Tire Chains, Lagrand Steel Company, Lagrand Steel Corp., Brian Lagrand and Dianne Lagrand, husband and wife, Brian Lagrand, individually, Dianne Lagrand, individually, Richard Hagerty and Jane Doe Hagarty, husband and wife, John Doe Hagarty and Jane Doe Hagarty, John Hart and Jane Doe Hart, husband and wife, John Doe I, John Doe II, John Doe III, Allwest Transport aka Allwest Transport and Chain, All–West Transport, Inc., All–West Transport II, LLC, Clarice Janet Kahl Trust, Dianne J. Lagrand and**

Deborah A. Kahl, trustees, Sutton and Johnson, Inc dba Sutton's Tire and Chain, Ronald Sutton, individually, Quality Chain Corporation, and Richard Schmunck, individually; Defendants.

No. CIV. 00–800–HA.

United States District Court, D. Oregon.

Feb. 19, 2002.

Gideon D. Caron, Gideon D. Caron, P.S., Vancouver, WA, John Peter Crowell, Portland, OR, William D. Robison, Morse and Bratt, Vancouver, WA, for Cooper Industries, Inc., Cooper Tools Div.

Bradley O. Baker, Bradley O. Baker, P.C., Portland, OR, David C. Landis, Portland, OR, for Dianne Lagrand.

James L. Hiller, Hitt Hiller & Monfils, LLP, Portland, OR, for Richard Hagerty, All-West Transport II, LLC, All-West Transport, Inc., Allwest Transport.

Thomas A. Larkin, Matthew A. Wand, Stewart Sokol & Gray, LLC, Portland, OR, for Sutton & Johnson, Inc., Ronald Sutton.

William L. Larkins, Jr., Julie R. Vacura, Larkins Vacura, LLP, Portland, OR, for Clarice Janet Kahl Trust.

Margaret M. Fiorino, Portland, OR, for Tim Navy.

Dennis W. Percell, Connie L. Speck, Arnold, Gallagher, Saydack, Percell & Roberts, P.C., for Quality Chain Corp., Richard Schmunk.

## OPINION AND ORDER

HAGGERTY, District Judge.

The plaintiff has alleged claims of a Racketeer Influenced and Corrupt Organizations Act (RICO) violation pursuant to 18 U.S.C. § 1962, breach of contract, conversion, fraud, and disregard of corporate entity. Presently before the court are motions for summary judgment by defendants Deborah A. Kahl (former trustee of the Clarice Janet Kahl trust), Tim Nay (the current trustee of the Clarice Janet Kahl Trust), and Dianne J. Lagrand [1] (both as an individual and as former trustee of the Clarice Janet Kahl trust).[2]

### BACKGROUND

Brian Lagrand, Richard Hagerty and John Hart were involved in a series of business transactions with the plaintiff which resulted in a loss to the plaintiff of approximately $731,000. A default judgment has been entered against Brian Lagrand. The status of the plaintiff's claims against Hagerty, Hart, and the John Doe and Jane Doe defendants is unclear.[3]

---

1. The case caption contains the spelling "Dianne" Lagrand. Other documents in the record refer to the defendant as Diane Lagrand. The defendant's name will be spelled "Dianne" hereinafter, consistent with the case caption.

2. Defendant Nay filed a motion to strike which was withdrawn during oral argument and was therefore denied as moot. (*See* docket number 156).

The parties have stipulated that the Clarice Janet Kahl Trust is not a proper defendant and should be dismissed. The plaintiff has

also agreed that Deborah A. Kahl should be dismissed, but argues that the successor trustee, Tim Nay, is a proper defendant.

3. The plaintiff has plead an action for conversion based on Section 2–403 of the Uniform Commercial Code against defendants Sutton and Johnson, Ronald Sutton, Quality Chain Corporation and Richard Schmunck. These defendants purchased the Cooper tire chains from Brian Lagrand, and apparently paid Lagrand for those chains. The plaintiff's theory is that these defendants were not "good faith purchasers for value." No motions have been filed with respect to these claims.

From approximately January 30, 2000, to February 28, 2000, Brian Lagrand, Richard Hagerty and John Hart, acting through one or more of the Lagrand Companies,[4] used mail and wire communications to order tire chains from the plaintiff for which they allegedly never intended to pay. To cause the plaintiff to deliver the tire chains without prepayment, Brian Lagrand and Richard Hagerty allegedly made representations which were intended to and, in fact, did cause the plaintiff to believe that the Lagrand Companies were affiliated with a similarly named Oregon company which had outstanding credit and an outstanding business reputation.

Brian Lagrand had a history of gambling and incurring debts, His wife, Dianne J. Lagrand, was apparently aware that he had "bad credit," had creditors "hounding him," and had garnishments against him. She testified that she did not specifically know if Brian Lagrand had unpaid judgments against him, but she did "know he's burned a lot of bridges, borrowed a lot of money."

Dianne J. Lagrand was allegedly implicated in the scheme to defraud both through her connection to one or more of the Lagrand Companies and through her position as trustee of the Clarice Janet Kahl Trust. She was listed as the president of Lagrand Steel Company, which was a business name used by Brian Lagrand and Richard Hagerty in their correspondence with the plaintiff. The business

address on Lagrand's correspondence with the plaintiff was 5645 S.W. Cherry Street, Beaverton, Oregon.

Dianne J. Lagrand is also the daughter of Clarice Janet Kahl.[5] Together with her sister, Deborah A. Kahl, she was trustee for the Clarice Janet Kahl Trust during the time relevant to this case. The trust was established in 1996 to provide support for Clarice Kahl because her husband suffered from Alzheimer's Disease and the cost of his care would otherwise have left Clarice Kahl destitute.

The trust corpus consisted primarily of two properties, including the Cherry Street property.[6] It also maintained several minimal bank accounts for the benefit of Clarice Kahl, including a money market account at Wells Fargo Bank (the Wells Fargo account). Dianne Lagrand had access to the trust accounts, including the Wells Fargo account.

In 1996, Brian and Dianne Lagrand sold a house in Beaverton. Somehow, Clarice Kahl's name appeared on a title for the Lagrand's Beaverton property, although it is clear from her deposition testimony that Clarice Kahl has no recollection of it and the evidence suggests only that she merely signed some papers prepared by Brian Lagrand. The apparent result of the Clarice Kahl's involvement with the Lagrand's property sale was that approximately $100,000 from the Lagrand house sale was invested in the subsequent purchase of the

---

4. "The Lagrand Companies" refers to the nine businesses listed in the caption of this case which have the word "Lagrand" in their names, and also to the businesses with some form of the word "Allwest" in their names.

  The plaintiff has submitted some evidence that at least one of the Lagrand Companies, Lagrand Chain Corporation, had been subject to involuntary dissolution by the State of Oregon. It appears that Lagrand Steel Corporation was simply a name change for Lagrand Chain Corporation.

5. Clarice Janet Kahl apparently went by the name of "Jan". For clarity, she will be referred to herein as Clarice Kahl.

6. The trust property is actually located on S.W. Cherry "Avenue" rather than "Street." It was purchased by the Trust in 1998. The property is hereinafter designated as the Cherry Avenue property.

Cherry Avenue house for the benefit of the Trust.[7] The amended Trust instrument states that 41% of the proceeds from the Cherry Avenue house will be distributed to Dianne Lagrand when the trust is dissolved, and that percentage reflects the $100,000 investment from the Lagrand's property sale. There is also evidence that Clarice Kahl loaned Brian Lagrand $65,000 at a 70% rate of interest near the time of the property sale. Again, although Clarice Kahl has a vague recollection of the loan, she has no recollection of and cannot explain any of the details of that financial relationship.

Dianne and Brian Lagrand returned to Oregon from Las Vegas in 1998, and they moved into the Cherry Avenue house. At about that same time, Clarice Kahl loaned Brian Lagrand $60,000, at 9% interest.

At some point in 1998, Clarice Kahl noticed that Dianne Lagrand had withdrawn trust money from the Wells Fargo account without her knowledge or permission. Clarice Kahl then withdrew the remaining Trust money from that account, which totaled less than $10,000, and deposited it into another of the Trust's checking accounts. From that time forward, the Wells Fargo account was used exclusively by Dianne Lagrand as her personal checking account, although it retained the designation as a Trust account.[8]

Dianne Lagrand used the Wells Fargo account to conduct financial transactions for Brian Lagrand, who did not have a checking or any other bank account in his own name. Brian Lagrand used the Wells Fargo account to deposit checks, and routinely made such deposits without his wife's knowledge. Dianne Lagrand would then write checks or withdraw cash for him. There is no evidence that she wrote any checks specifically to aid in the conduct of any of the Lagrand Companies' business ventures.

From the end of March, 2000, through May, 2000, when Brian Lagrand was receiving the money from the re-sale of the plaintiff's tire chains, over $230,000 was deposited into the Wells Fargo account. Although Brian Lagrand apparently deposited most of this money directly into the account, the plaintiff claims that there is evidence that Dianne Lagrand deposited four checks, "all of which related to her husband's business." RICO Statement, page 2.[9] She also made many cash withdrawals, wrote one $20,000 check to Clarice Kahl for the repayment of a loan, and purchased a 2000 GMC Yukon for approximately $38,000.[10] Dianne Lagrand also

---

7. Although the Cherry Avenue house is presumably legally owned solely by the trust, both Clarice Kahl and Dianne Lagrand consider themselves the joint owners of that property. The Lagrands lived in the Cherry Avenue house from 1998 until 2000 without paying rent. Brian Lagrand disappeared with Dianne Lagrand's car and dog when this lawsuit was filed. Dianne Lagrand continues to reside at Cherry Avenue rent-free. Deborah Kahl also lives there.

According to Clarice Kahl, she has always paid the taxes and insurance for the Cherry Avenue house. She made these payments from her own checking account.

8. Throughout this time, Clarice Kahl and Deborah Kahl apparently had authority to write checks on the Wells Fargo account, but there is no evidence that anyone other than Dianne and Brian Lagrand used the account.

9. The four checks which Dianne Lagrand was alleged to have personally deposited were from Pewag Incorporated of Burr Ridge, Illinois; Maryland Metals, Inc., of Hagerstown, Maryland; Arctic Wire Rope and Supply of Anchorage, Alaska; and a cashier's check drawn on the Royal Bank of Canada for $28,918.61.

10. The Yukon was registered in Dianne Lagrand's name, but the evidence is undisputed that it was used almost exclusively by Brian Lagrand. There is also some reference in the record to Brian Lagrand's subsequent sale of the vehicle. The court has not been able to find any actual evidence of the sale or of Dianne's role in that sale, although she pre-

spent at least $5000 for improvements to the house on Cherry Avenue.

### STANDARD OF REVIEW

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R.Civ.P. 56(c); *Bhan v. NME Hosp's, Inc.,* 929 F.2d 1404, 1409 (9th Cir.) *cert. denied,* 502 U.S. 994, 112 S.Ct. 617, 116 L.Ed.2d 639 (1991).

The moving party must carry the initial burden of proof. The party meets this burden by identifying portions of the record on file which demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.* The facts on which the opponent relies must be admissible at trial, although they need not be presented in admissible form for the purposes of opposing the summary judgment motion. *Id.*

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.,* 669 F.2d 1278, 1284 (9th Cir.1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens,* 533 F.2d 429, 432 (9th Cir.1976). The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Valandingham v. Bojorquez,* 866 F.2d 1135, 1137 (9th Cir.1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sanko-*

vich v. Life Insurance Co. of North America, 638 F.2d 136, 140 (9th Cir.1981).

Deference to the non-moving party does have some limit. The non-moving party "must set forth specific facts showing that there is a *genuine* issue for trial." Fed. R.Civ.P. 56(e) (emphasis added). The "mere existence of a scintilla of evidence in support of the plaintiff's position would be insufficient." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### DISCUSSION

Plaintiff's Second Amended Complaint alleges civil RICO claims pursuant to 18 U.S.C. § 1962(c) and (d). However, in its RICO Statement dated February 11, 2002, the plaintiff explains that his RICO claims against Dianne Lagrand are brought pursuant to 18 U.S.C. § 1962(b) and (c).

18 U.S.C.1962(b) states:

It shall be unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Under this statute, the plaintiff must prove that a person either acquired or maintained an interest in or control of an enterprise as a result of racketeering activity.

18 U.S.C. § 1962(c) states:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of

sumably would have been required to sign the       title.

which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . .

The relevant terms contained in § 1962(b) and (c) are defined in § 1961. A "person" is defined as "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3).

■ An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An "associated-in-fact" enterprise requires proof "(1) of an ongoing organization, formal or informal, and (2) that the various associates function as a continuing unit." *Chang v. Chen,* 80 F.3d 1293, 1297 (9th Cir.1996). The "associated-in-fact" enterprise must also be an organization, formal or informal, "separate and apart from the pattern of [racketeering] activity in which it engages." *Chang,* 80 F.3d at 1298 (adopting the restrictive interpretation of "enterprise" consistent with the language of *U.S. v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), and consistent with the majority of other circuits).

"Racketeering activity" means " . . . (B) any act which is indictable under . . . [18 U.S.C.] section 1341 (relating to mail fraud), section 1343 (relating to wire fraud) . . ., section 1956 (relating to the laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions) . . . " 18 U.S.C. § 1961(1)(B).[11]

18 U.S.C. § 1341 makes it illegal to use the mails to carry out any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.

18 U.S.C. § 1343 states:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned . . . " 18 U.S.C. § 1343.

18 U.S.C. section 1956 imposes liability for money laundering on any person who,

knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—with the intent to promote the carrying on of specified unlawful activity; or . . . knowing that the transaction is designated in whole or in part—to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . .

18 U.S.C. § 1956(a).

Finally, 18 U.S.C. § 1957(a) makes it illegal to engage in monetary transactions in property derived from specified unlawful activity, and states:

Whoever . . . knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is de-

---

**11.** These four listed examples of racketeering activity are the racketeering activities alleged in this case.

rived from specified unlawful activity, shall be punished as provided . . .

"Specified unlawful activity" includes any racketeering activity as defined in 18 U.S.C. § 1961(1). 18 U.S.C. § 1956(c)(7)(A); 18 U.S.C. § 1957(f)(3). However, the defendant need not know which form of racketeering activity generated the proceeds, but only that some form of illegal activity which would constitute a felony under State, Federal or foreign law. 18 U.S.C. § 1956(c)(1).

■ The RICO statute does not define the term "pattern," but the courts have determined that a pattern must be based on at least two acts of racketeering, must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Ticor Title Insurance Company v. Florida*, 937 F.2d 447, 450 (9th Cir.1991). "The relationship requirement is satisfied by a showing that the racketeering predicates 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Id.* at 450 (quoting *H.J. Inc.*, 492 U.S. at 240, 109 S.Ct. 2893). The continuity element is satisfied by a showing that the predicate acts "pose a threat of continued criminal activity, such as when the illegal conduct is 'a regular way of conducting [a] defendant's ongoing legitimate business.'" *Id.* (quoting *H.J. Inc.*, 492 U.S. at 243, 109 S.Ct. 2893). However, "the statement that a pattern 'requires at least' two predicates implies that while two acts are necessary, they may not be sufficient.'" *H.J. Inc.* at 237, 109 S.Ct. 2893 (quoting *Sedima v. Imrex*, 473 U.S. 479, 496, n. 14, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). Further, "'two isolated acts of racketeering activity do not constitute a pattern . . .'". *Medallion Television Enterprises v. SelecTV of California*, 833 F.2d 1360, 1362 (9th Cir.1987) (quoting *Sedima*, 473 U.S. at 496, n. 14, 105 S.Ct. 3275).

### 1. 18 U.S.C. § 1962(b) and (c) Claims Against Dianne J. Lagrand

Dianne Lagrand is clearly a person within the meaning of the RICO statute. For the purposes of this motion, the court will assume that the plaintiff's evidence establishes the existence of a relevant enterprise.[12] However, the RICO claims against Dianne Lagrand must fail because there is no evidence that she exercised sufficient control of any enterprise such that RICO liability could attach, or that she had sufficient knowledge that the money involved in the alleged financial transactions were proceeds of some form of unlawful activity. *See U.S. v. Nattier*, 127 F.3d 655 (8th Cir.1997) (defendant must know that funds were illegal proceeds).

### a. "Control of" or "Interest in" Enterprise

■ To prove Dianne Lagrand's involvement in an enterprise, the plaintiff has offered a printout obtained from a State of Oregon website. The printout lists Dianne Lagrand as having been the

---

**12.** The plaintiff's RICO Statement (Docket # 157) appears to identify the alleged enterprises as the various Lagrand Companies, and the Clarice Janet Kahl Trust. The plaintiff specifically states that Dianne Lagrand was an individual separate from the enterprises, and there is no allegation that she was a member of an "association-in-fact" enterprise. Neither did the plaintiff make any written or oral argument that the enterprise was an association in fact, but rather identified only "[Brian] Lagrand, his companies, and the Trust" as constituting "an enterprise under the meaning of the law." Memorandum in Opposition, page 5.

president of one or more of the Lagrand companies at some unspecified time.[13] However, Dianne Lagrand claims that she was not aware that she was a president of anything. While this may appear to raise a genuine issue of fact, the fact is not material. Assuming that Dianne Lagrand was the president of one or more of the Lagrand companies, the material issue is either (1) whether she conducted or participated in the conduct of the Lagrand Companies affairs such that she can be liable, as a matter of law, under § 1962(c); or, (2) whether Dianne Lagrand acquired an interest in or control of an enterprise through a pattern of racketeering activity pursuant to 1962(b).[14]

In *Reves v. Ernst & Young*, 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), the Supreme Court addressed the question of the extent of participation necessary to trigger liability under § 1962(c), and concluded that "one is not liable under that provision unless one has participated in the operation or management of the enterprise itself." *Reves*, 507 U.S. at 183, 113 S.Ct. 1163.

> Of course, the word "participate" makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required.

*Reves*, 507 U.S. at 179, 113 S.Ct. 1163.

The case of *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir.1993), provides some guidance. In *Baumer*, the court found that the defendant did not conduct or participate in the enterprise's affairs within the meaning of *Reves* even though he allegedly prepared and mailed two letters for the purpose of covering up a fraudulent scheme, and prepared and mailed false partnership agreements in furtherance of the enterprise. *Baumer*, 8 F.3d at 1344. The court found that the defendant did not "play any part in directing the affairs of the enterprise." *Id.*

Corporate titles, without more, are insufficient to establish that a person is a material participant in any racketeering activities. *Webster v. Omnitrition Int'l Inc.*, 79 F.3d 776, 789 (9th Cir.1996) (defendant's "purely ministerial" role as "Assistant Secretary" in corporation is insufficient to warrant liability under § 1962(c)).

In addition to Dianne Lagrand's designation as president of Lagrand Steel Corporation, the plaintiff has offered Dianne Lagrand's admission that sometimes Brian gave her money for helping out with the business, but there is no evidence that the "helping out" was anything other than menial work or that she had anything to do with the operation or management of the affairs of Lagrand Steel Corporation. The term "operation" has a narrow meaning related to running the business enterprise, not running a copy machine or running a few errands.

The plaintiff's only other evidence that could relate to Dianne Lagrand's participation in the operation or management of Lagrand Steel Corporation is her knowledge that Brian Lagrand bought and sold tire chains, and that his suppliers included

---

**13.** The plaintiff's internet search result shows that, at some point in time, Dianne Lagrand was listed as the president of Lagrand Steel Corporation. The exhibit also includes the name "Lagrand Chain Corp.," but Dianne Lagrand's relationship to that company is not clear from the face of the document. The plaintiff maintains that she was also the president of that company.

**14.** The plaintiff has made no argument that Dianne Lagrand acquired an "interest in" an enterprise through racketeering activity, so the court will only address the "control of" element of § 1962(b).

Cooper and others.[15] The fact that she overheard a conversation between her husband and another person in her home would not, even with her designation as the president of Lagrand Steel Corporation and her admission that her husband sometimes paid her for helping out, lead a rational trier of fact to find that she participated in the control of the affairs of the enterprise in any way.

The plaintiff also relies on Dianne Lagrand's involvement with the Clarice Janet Kahl Trust to show that she participated in the enterprise. It is clear from the evidence that the Trust affairs were directed solely by Clarice Kahl.[16] There is no evidence that Dianne Lagrand did anything for the Trust other than appropriate an otherwise unused checking account for her own benefit. However, even assuming that Dianne Lagrand participated in directing the affairs of the Trust, there is no evidence from which a rational factfinder could link the operation of the Trust with the operation of any of the Lagrand Companies or with the scheme to defraud the plaintiff.

### b. Racketeering Activity

■ Both subsections of § 1962 require proof that the person accused of violating the RICO statute must be involved in racketeering activity. The plaintiff identifies money laundering as the racketeering activity in which Dianne Lagrand allegedly took part. Both money laundering statutes require knowledge that the property involved in the monetary transaction was the proceeds of racketeering activity.

In this case, the evidence clearly could support an inference that Dianne Lagrand was attempting to conceal the location and ownership of the money that she and Brian Lagrand had deposited into the Wells Fargo account. However, the only evidence that the plaintiff offers to establish her knowledge that the money was proceeds of racketeering activity is the fact that a large amount of money was involved. The amount of money deposited in the Wells Fargo account, under the circumstances here, does not permit an inference that Dianne Lagrand knew that the money was the proceeds of some racketeering activity or other specified unlawful activity within the meaning of the statute.

The circumstances of this case are different from controlled substances cases in which large amounts of cash are the subject of the inquiry, and where those who possess that cash traffic in drugs and cannot offer any legitimate source for the money. In this case, Dianne Lagrand knew that her husband did operate a business which sold tire chains. She could also see that the money she deposited was in the form of checks, some of which were written by business entities that were apparently in the tire chain business, and all of which appeared to be legitimate business enterprises and banking institutions. It is also clear that there is no evidence that Dianne Lagrand was involved in or had knowledge of the alleged scheme by Brian Lagrand to fraudulently induce the plaintiff to enter into a contract with him, and she did not exercise any control over

---

**15.** In her affidavit of October 10, 2001, Dianne Lagrand stated: "[My] husband made other deposits into the Wells Fargo money market account with moneys from purchasers of tire chains. I do not know who supplied those tire chains to my husband because he also obtained tire chains from suppliers other than Cooper."

**16.** Plaintiff's introduction of the 1996 and 1998 transactions between Brian Lagrand and Clarice Kahl have no relevance to the RICO claims based on conduct that can be proven to have occurred only in 2000.

any of the Lagrand Companies sufficient to implicate her in those companies' activities. Although the evidence clearly could support an inference that Dianne Lagrand knew that her husband, through her, was attempting to conceal money from his creditors, no reasonable factfinder could conclude that she knew that the money she was helping to conceal was proceeds from racketeering activity. Therefore, both of plaintiff's theories under § 1962 must fail.

### 2. Breach of Contract Claim Against Dianne J. Lagrand

The plaintiff has offered no evidence to support the existence of a contract to which Dianne Lagrand was a party. Cooper suggests that it should be allowed to pierce the corporate veil to reach Dianne Lagrand's personal assets because she was the president of Lagrand Steel Corporation, but again the failure of an proof of her control of any of the Lagrand Companies is fatal to this argument.

### 3. Conversion Claim Against Dianne J. Lagrand

Conversion is the intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel. *Mustola v. Toddy*, 253 Or. 658, 663, 456 P.2d 1004 (1969). While the tire chains themselves are chattel that would be subject to conversion, there is no proof that Dianne Lagrand had any knowledge of the tire chains or ever did anything with respect to the tire chains other than perhaps to act inadvertently as a corporate officer for the business entity that acquired the chains from the plaintiff.

The plaintiff's theory depends on the novel contention that any business creditor can make a claim against any specific funds that the debtor has received from the sale of the creditor's products. Without proof of a security interest, that argument fails. In this case, the evidence is clear that Dianne Lagrand did write checks backed by the proceeds of the sale of the chains. But without more, the plaintiff's claim fails.

Oregon law does support a claim for joint tort liability for the execution of a common plan or design. However, this would go to the purchase of the chains and there is no evidence that Dianne Lagrand either (a) did a tortious act in concert with the other or pursuant to a common design with him, or (b) knew that the other's conduct constituted a breach of duty and gave substantial assistance or encouragement, or (c) gave substantial assistance to the other in accomplishing a tortious result and her own conduct, separately considered, constituted a breach of duty to the plaintiff. *Stull v. Porter*, 100 Or. 514, 196 P. 1116 (1921). Mere participation in a scheme that results in a tort does not result in joint liability if the participant had no reason to suppose that a tort would be committed. RESTATEMENT (SECOND) OF TORTS § 876, comment e (1979). Knowledge of the commission of the tort and aid in accomplishing the commission of the tort are required. *Granewich v. Harding*, 329 Or. 47, 58, n. 6, 985 P.2d 788, (1999).

### 4. Defendants Deborah A. Kahl and the Clarice Janet Kahl Trust

The plaintiff admits that the Trust is not a person within the meaning of the RICO statute. Further, there is no evidence that the Trust was a party to any contract with the plaintiff, or that the Trust converted any of the plaintiff's property.

The plaintiff seeks some relief from the Trust based on a theory of unjust enrichment, and has asked the court to accept the plaintiff's tracing of assets and

creating a constructive trust in favor of the plaintiff. However, that is an equitable remedy which is not supported by the facts of this case.

As stated above, the plaintiff has conceded that the claims against Deborah A. Kahl must be dismissed.

### *CONCLUSION*

Defendant Dianne J. Lagrand's motion (# 118) for summary judgment is granted. Defendant Deborah A. Kahl's motion (# 107) for summary judgment is granted. The motion (# 110) for summary judgment by Tim Nay is granted.

The plaintiff shall file a status report within ten (10) days from the date of this order, and shall identify any remaining claims against any remaining defendants, and shall describe the status of those claims.